San Antonio & Aransas Pass Railway Company v.
A. M. Turney.

Decided December 2, 1903.

1.—Carriers of Passengers—Degree of Care—Unsafe Yards.

The degree of care exacted of carriers in the transportation of passengers, applies not only at the station and proximate approaches, but to its premises generally, where it is made to appear that the defendant, by its acts, made it necessary or proper for its passenger to take the course he does for the purpose of getting on its train. The rule applies as well while the passenger is engaged in proper acts in the effort to board the train as when he is on the train.

2.—Same—Demurrer—Contributory Negligence.

The petition sufficiently alleging negligence and the answer setting up contributory negligence the trial court declined to pass upon the facts relied upon in the countervailing plea in the nature of a demurrer, and submitted the issue to the jury. Held correct.

3.—Same—Negligence—Evidence.

It being a question of fact as to the negligence of defendant, and also as to plaintiff's contributory negligence, there was no error in allowing proof of the conditions existing at the place of the accident.

4.—Same—Practice—Directing Verdict.

Evidence considered and held to present the issues of negligence and contributory negligence, wherefore the trial court did not err in refusing to direct verdict for defendant on the proof.

5.—Same—Charge.

Under the proof held that the trial court did not err in submitting to the jury whether the plaintiff, in attempting to board the train, proceeded under the directions and at the invitation of defendant's conductor.

6.—Same—Charge—Date of Accident.

Where the petition alleged the accident as "on or about" December 14th, it was not objectionable that the charge submitted the accident as occurring "on or about" that date.

7.—Same—Diminished Earning Capacity—Excessive Verdict.

Evidence considered and held to authorize a finding of plaintiff's diminished earning capacity, and to support the award of $4000 as damages.

8.—Same—Depot Premises.

Under the circumstances of the case held immaterial whether or not the place of the accident was strictly within defendant's depot premises.

Appeal from the District Court of Kerr. Tried below before Hon. I. L. Martin.

*Houston Bros.* and *R. J. Boyle,* for appellant.

*Burney & Garrett* and *Ball & Ingram,* for appellee.

JAMES, Chief Justice.—The petition of A. M. Turney contained allegations as follows:

That he accompanied a shipment of cattle billed and routed from Alpine, Texas, to Kansas City, Mo.; that at Flatonia, Texas, the cars containing the cattle were transferred to defendant's line, and it became necessary that a new contract be made with defendant for transportation over appellant's line, which was executed at the depot by the station agent in the presence of the conductor who had charge of the train which

was to transport the cattle over defendant's line from Flatonia, to Waco, which contract entitled plaintiff to accompany the shipment; whereupon the conductor told plaintiff that the train had moved down the track some distance from the depot (which plaintiff alleges was the fact) and that he must hurry and get on the train as they had already been delayed; that it was very dark and plaintiff was ignorant of the surroundings; that he went with the conductor towards the train, the conductor with his lantern walking between the rails of one track, and plaintiff between two tracks, the main track and siding, and while so proceeding very rapidly, plaintiff doing so to keep up with the conductor, he suddenly came upon and fell into a deep gully, trench or ditch, of which he did not know and could not see, though he was exercising ordinary care at the time, by which fall he was injured. That such injuries were the result of defendant's negligence in having said gully, trench or ditch upon its property and between its tracks, along the route over which the plaintiff was required to go to get to his train, and over which he went by defendant's invitation and under the direction of defendant's conductor.

The petition also alleged negligence of defendant in failing to have the place protected, or lighted, and in failing to warn plaintiff through the conductor or otherwise of its existence, and also in moving the train to a place which rendered it necessary for plaintiff to expose himself to such ditch in order to get to the train instead of having it at the depot.

The answer, in addition to a general denial, pleaded demurrer, assumed risk, and contributory negligence. Judgment was for plaintiff for $4000.

The first, third and fourth assignments relate to overruled demurrers and as briefed by appellant present the following propositions:

1. Defendant was not required to have the gully covered, guarded or lighted, and could not be charged with negligence for its failure to do so, it being only required to keep in a reasonably safe condition such portions of its depot grounds as are reasonably near the platforms and station, where persons entitled to passage would naturally or ordinarily go, and the petition shows that the gully or ditch into which he fell was remote from the depot and at a place where the public did not or would not naturally resort.

2. The rule that carriers of passengers are held to the highest degree of care in respect to their safety, does not apply to cases where the carrier is not a bailee of the person of the passenger, and in such cases only ordinary care is exacted, and the petition disclosing that appellant's conductor, provided with a lantern, undertook to accompany plaintiff to the train, shows that defendant had performed its duty in the premises.

In reference to the first of these propositions we hold that the duty of high care referred to applies not only at the station and proximate approaches, but to its premises generally, where it is made to appear that defendant, by its acts, made it necessary or proper for its passenger to take the course he does for the purpose of getting on its train.

In reference to the second proposition we hold that a carrier of passengers owes the latter the same degree of care in providing for their safety when they are engaged in proper acts in the effort to board trains, as when they are upon trains. The allegations here are to the effect that the train was not brought to the station, but to a point some distance off, and plaintiff was required to go there to get on, and was bidden by the conductor of the train to go to it, who indicated the course to be taken by plaintiff, and went with plaintiff. While so proceeding to the train plaintiff was entitled to the same degree of care and precaution for his safety.

The second assignment relates also to the demurrer. The point made is that the petition shows that the conductor with a lantern undertook to accompany plaintiff to the train, and if the latter was unable to see the gully or trench he must have gone beyond the range of the light and so was guilty of contributory negligence.

Plaintiff alleges that the conductor had a lantern, but does not allege its range or degree of light. The petition does allege in substance that plaintiff was walking very rapidly keeping up with the conductor, the latter walking upon a track and he between that and another, and while so doing suddenly came upon and fell into the gully which he had not seen, and of the existence of which he did not know; that the night was very dark. The question of whether or not plaintiff saw the gully, or in the exercise of such care as an ordinarily prudent person should have exercised in his circumstances, should have seen the gully, was properly left for the jury.

It being a question of fact as to the negligence of defendant, and also as to plaintiff's contributory negligence, there was no error in allowing proof of the conditions existing at the place of the accident. Therefore we do not sustain the fifth, sixth and seventh assignments. Plaintiff was in this respect allowed to testify to the unlighted, uncovered and unguarded condition of this ditch. From appellant's argument we understand it to base these assignments upon the theory, already disposed of in this opinion, that defendant owed no duty to use such precautions or any precautions to protect passengers in a portion of its grounds remote from its depot.

The eighth assignment is that there was error in overruling the motion to direct a verdict for defendant. The propositions are in substance that it does not appear from the evidence that defendant was guilty of negligence in failing to have the ditch lighted, covered or guarded or in failing to warn plaintiff. Also that it appears affirmatively from plaintiff's evidence that his injury occurred through his own negligence. The testimony would not have warranted the court in assuming either as a matter of law. The matters mentioned in the argument submitted under this assignment are really argumentative upon the subject of plaintiff's knowledge and want of care and were for the jury, but not for the court to act upon.

At this place it will be proper to refer to the testimony. Plaintiff

testified that after he had signed the contract at the depot, which had been delayed by the station agent not being on hand, the conductor said to him, "Hurry up; let's go; we have been late." "We got out and went as fast as we could without running, towards the train; the conductor was with me; we were walking side by side going towards the caboose. As we walked we were talking. The conductor was just about nearly as close to me as we could walk. He was walking on the track, and I was walking right by the side of the track. The character of the ground there about the tracks and between the depot and down to the gully was level. It was about 100 yards [another witness estimated the distance as sixty or seventy steps] from the ditch to the depot; the caboose was about fifty yards above the trestle, about 150 yards from the depot. The caboose was right up on the track on the north side of the trestle between the caboose and the depot; the trestle was over a ditch or gully about ten or twelve feet deep in the center, and I guess it was thirty or forty feet wide. There are two tracks or trestles over the ditch at that place.

"When we started towards the train from the depot the conductor and myself in a fast walk, he said, 'Hurry up; let's go.' I asked him which was our caboose and he said the one with a red light on it, and we went toward it. We could see the red light on the train, and we went toward it both walking right toward it. He was on the track and I was right by his side, and when we got up there as far as the trestle, the first thing I knew I was falling into it. I had never been near the trestle. I did not know of its existence. The conductor didn't say anything with reference to its being there. There was no light about it. They had lights at the depot, but didn't have any outside at all. It [the trestle] was in a V shape, the track branched off just before we got to the trestle. * * * The depot was only a short distance from the track and we were going right down the track when we got here [referring to a sketch]. I was on this side of him and right there is where I fell, right at this V-shaped place right at the top of the trestle; * * * fell right in the ditch that comes under the two trestles. The two trestles are separated; they were about six or eight feet apart. Of course they widen out on the other side. The ditch was about thirty to forty feet wide; the banks were steep; where I fell off it was blocked up with wood and was perpendicular—straight up. There was no other way, so far as I knew, of getting on the train than the way the conductor and myself proceeded. I knew of no way to go only right on up toward the train. The reason I went that way the conductor started on that way and said to go with him. The conductor didn't tell me of the existence of the ditch; didn't say anything about the ditch at all. I have seen the ditch since I fell into it. I saw it last Friday in the daytime. The width is about what I have stated it I think. I think it would be about ten or twelve feet deep in the center of the ditch. There were two trestles across it. It was not in the same condition it was when I fell into it. There was nothing there [referring to a plat].

Just the track came right up to the ditch and right straight on. At the time I fell into the ditch I was walking right by the conductor's side, right close to him. He was walking right on one track, I was outside the rail right by his side. As to the color of the ground leading up to the ditch: Down next to the depot it was sand, light-colored sand, something like this in this country, and up toward the ditch it had cinders in it. There was no mark or anything that I could see that night the difference where the ground stopped and the ditch started. I was not walking ahead of the conductor, right by his side. As we walked down there we were talking; he knew I was there."

Appellant contends because plaintiff at the trial evinced familiarity with the details of the place and surroundings where he was hurt, and there being sufficient light for him to acquire this knowledge before he was hurt, the conductor was not negligent in not warning him, nor under these circumstances was defendant responsible for negligence in not having the place lighted or guarded, but plaintiff was guilty of contributory negligence. If it plainly appeared that plaintiff, before he walked into it, knew of the presence and condition of the ditch these conclusions would follow. But the testimony was not distinctly this way, and was such that the jury might properly have found that the knowledge plaintiff showed at the trial was not obtained under such circumstances as would have made his conduct inconsistent with reasonable care on that occasion. He was put to cross-examination on the very matter, and he reiterated that it was a very dark night and he could not see the ground. As to how he knew the depth of the ditch, he stated he climbed out and had a pretty good idea of how deep it was, and besides he went there the other day. As to its width he learned that when he tried to get out; that he didn't know its width exactly and don't know it yet. He knew there were two trestle bridges over the ditch that night as he could skylight the trestle work; looking up he could see there were trestles there—two trestles. The conductor also told him to go under the trestle. He knew the two tracks (the main track and a transfer switch) divided because he stepped over one. "Coming along the switch there you could tell there was a track there. * * * I didn't know the exact situation of the tracks until I looked at it again." He stated that he was not certain that the conductor was carrying a lantern (but this fact he had alleged).

The fact that plaintiff testified to the character of the soil near the depot was not remarkable, the depot being lighted, and a man may know that he is walking on cinders without being able to see them.

There was the testimony of a witness, Meade, that if he remembered right there was a walk on the edge of the trestle, which he guessed was four or five feet, perhaps more, perhaps less, from the track. Plaintiff testified that the present condition of the trestle with reference to railways and floorings was not the same then as now, and that there was no railway or flooring there when he fell between the two tracks. Meade's testimony indicates that there was no walk on the side of the

trestle between the tracks. This matter is doubtless referred to as indicating that plaintiff was not walking near the track as he testified. Plaintiff testified that the conductor was on the track and he by the side of the track, right at the former's side, and when they got to the trestle the first thing he knew he was falling into it.

How, upon the whole evidence, the court could have decided the negligence of either party as a matter of law, we can not understand. The defendant, through this conductor who was accompanying and directing plaintiff to the train, knowing where and how he was walking, owed him the duty to use reasonable care in protecting him against dangers that existed in his route. The night was dark, plaintiff was unacquainted with the place, the route taken by plaintiff according to the testimony was the direct one to the train, and the one plaintiff was requested and permitted to take by the conductor who waited for him and went with him. The evidence indicates that the place where plaintiff fell was upon the premises of defendant. They were walking "as fast as they could not to be running." The conductor was hurrying plaintiff along. The ground appeared to be level. Even if the conductor had a lantern, the court could not safely have assumed that the circumstances were not such as would have induced a reasonably careful person to reach the gully without having detected it. The evidence presented a question for the jury as to plaintiff's want of ordinary care, and also a question as to the carrier's negligence toward a person in plaintiff's situation in having this danger which was connected with the way.

There was no error in the charge referred to in the ninth assignment. What has been said disposes of the question.

The tenth assignment of error complains of the fifth paragraph of the charge. This paragraph submits the case upon two phases in separate clauses, one as to negligence of the conductor in not warning plaintiff; the other, negligence of defendant in having the gully open and unprotected, without reference to warning. The assignment is that the court erred in the fifth paragraph of its charge. It is probably open to objection as not being in strict accordance with the rules. Commack v. Rogers, 73 S. W. Rep., 795. But inasmuch as it relates to one subject, viz., the question of defendant's negligence, we have concluded to consider it. There are advanced six propositions under the assignment. The first is disposed of by what has been already said. The second and fifth are that the court should not have submitted the question as to plaintiff acting in accordance with defendant's conductor's directions, or that he at the instance and direction of defendant's conductor followed in the way so directed by the conductor, there being no evidence to that effect. The evidence showed that the conductor waited at the station for plaintiff to sign the contract and get his transportation, then said to him to "Hurry up, let's go." The conductor pointed out the train by its light. He went with the conductor walking by his side, hurrying along almost running to keep up with him. The conductor had di-

rected plaintiff to go with him and he followed in accordance with this direction or invitation, and as directed by the movements of the conductor. From the actions of the person who plaintiff says walked with him to the train, after waiting for him at the depot, the jury could have found that he was the conductor, as plaintiff testified he was. There was therefore testimony to warrant the expressions in the charge.

The third proposition is not well founded. The charge did not assume the fact that appellant's conductor walked with plaintiff along its premises at the time of the injury. That fact left to the jury as one of the facts to be found from the evidence. Missouri P. Railway Co. v. Lehmberg, 75 Texas, 61.

The fourth proposition complains of the charge in stating that if the jury further find from the evidence that plaintiff was a passenger on defendant's train and find that on or about the 14th day of December, 1900, etc. It was alleged that the occurrence happened on or about December 14, 1900. The evidence fixed the date as December 14, 1900. Appellant insists that the court erred in submitting the injury as to the accident occurring "on or about" such date. We can see no reason for holding, in view of the undisputed evidence as to when the particular train left Flatonia (the night of the 14th), that this in any way operated to appellant's injury.

The sixth proposition is that there was no evidence showing that the gully or ravine was situated in a portion of appellant's depot grounds where the public naturally or ordinarily go, and no evidence showing that appellee went upon that portion of its premises at the invitation of appellant unaccompanied by any of its servants. The charge complained of did not definitely say anything about plaintiff undertaking to go to the train unattended by the conductor. Appellee himself seems to construe this fifth paragraph of the charge as submitting the negligence of defendant in case the conductor did accompany plaintiff to the train. In the first clause of the fifth paragraph the jury were instructed to find for plaintiff if among other things they found that plaintiff, at the instance and by the direction of the conductor of defendant, walked with said conductor towards the train; and in the second clause to find for plaintiff, if, among other things, they found that plaintiff, at the instance and direction of defendant's conductor, followed in the way so directed by said conductor. If he, at the instance and direction of the conductor, followed the conductor in going to the train, he was not unaccompanied by him. However, as will be explained further on, defendant, under the circumstances of this case, owed plaintiff the duty imposed on it in favor of passengers, at the place of this accident, even if he went there unaccompanied by the conductor, if he was not guilty of contributory negligence.

We do not sustain the eleventh assignment. The proposition is that when a person seeks to recover for impaired capacity to labor and earn money in a particular avocation, and the evidence shows that his earnings in such business have not been decreased by reason of such injury,

and are the same two years after the accident as they were before the injury, he is not entitled to recover for impaired capacity to labor and earn money in the future. The evidence showed that plaintiff had been working for his brother before and since the injury without any decrease of wages; that he was employed by his brother before and since the accident to manage his ranch; that the two middle fingers of his right hand were rendered stiff by the injury; that he could not close the fingers against his hand; that the fingers pain him a great deal, particularly when he undertakes to do any work about the ranch, or when the weather changes, and that after he has worked with them awhile they seem to be paralyzed and he has to quit. Also the two fingers would probably remain stiff permanently, and will, to some extent, disable his hand, and the use of the fingers will be attended with pain. He testified that he was not able to give his duties the same attention and perform the same labor now as before the accident. He couldn't do the work he did before because he couldn't take the lead with the men like he did before. We conclude that the fact that his condition as to wages having remained the same, this might be attributed to peculiar circumstances then existing and that had existed with him since the accident, but which might at any time change. His capacity to do his former work had, according to the evidence, decreased, and the jury looking to the permanent condition of his injured hand, and looking to the probable duration of plaintiff's life, and not merely to the present and past, could have found that his earning capacity had become diminished. We here overrule the sixteenth assignment charging that the verdict was excessive in amount.

The twelfth assignment complains of the refusal of the following instruction: "It is the duty of railway companies to keep in safe condition all portions of its station grounds to which the public do or would naturally resort, and if you believe from the evidence in this case that the place where plaintiff sustained his injury was a portion of defendant's depot grounds, where the public do or would naturally resort, then the defendant would be required to keep its said ditch or ravine covered or guarded; on the other hand if you do not believe that the place where plaintiff was injured was a portion of defendant's depot grounds where the public did or would ordinarily resort, then you are charged that the defendant would not be required to keep said ditch or ravine covered and its failure so to do would not constitute negligence."

From the presentation of the question sought to be made as we find it in appellant's argument under this assignment the point seems to be that if plaintiff unaccompanied and voluntarily went upon that part of the premises so remote from the depot, as where he was hurt, the issue of whether or not appellant failed to use ordinary care in having the gully open and unprotected should not have been submitted. The charge as framed ignored entirely the issue of his being accompanied and directed by the conductor in going over to the train.

The refused charge amounted to this, that if the gully was at a point

upon defendant's premises, where the public ordinarily did or would not resort, and defendant for that reason owed no duty to the public to cover or guard it, it owed no duty to plaintiff under the peculiar circumstances of this case. The refused charge was practically one directing the jury to find for defendant, as there was no testimony that the place where plaintiff received his injury was where the public did or would generally resort.

What has been said in the above discussion renders it unnecessary to do more with the thirteenth, fourteenth and fifteenth assignments than to overrule them.

We will add in conclusion that there was sufficient testimony to authorize the jury to find that plaintiff met his injury on appellant's premises. There is some doubt in our minds whether or not the brief of appellant raises this question directly. We doubt very much, if the facts were true, which the jury must have found in order to reach the verdict they did under the charge, that this question would be of any importance. The train was not brought to the depot but was held on the main track just across the gully from the depot, to start from that place. This was a stock train which plaintiff had to take. He was a passenger thereon. According to the testimony of the witness Foster, it was usual for such trains to stop and start at this place. At any rate such was the arrangement of appellant in this instance. Plaintiff was expected to, and it was necessary for him to go from the depot to the place where the train stood to get on board of it, and that too on a dark and misty night. Defendant had made it necessary for plaintiff, a stranger on the premises, to go from its depot to that train in the dark. It seems to us that if he had undertaken to do this alone, and in so doing, had taken a direct route (and this was the regular route) and had exercised ordinary care under the circumstances, and on the way had fallen into this gully, defendant would have been liable although the gully may not actually have been within appellant's premises. For the purposes of such a case under such circumstances, the intervening space would be regarded as defendant's premises. It would have been practically its invitation to plaintiff to walk across that ground for the purpose of reaching the train and an assurance that the way was safe.

But the case submitted was one in which the conductor of appellant's train directed or accompanied plaintiff from the depot to the train over this way upon which the danger existed. It seems to us that the fact as to this place being strictly upon appellant's depot premises was immaterial as the case was presented. But the evidence indicates that such was the fact. Appellant was allowed to testify that he thought where the train was standing was within the yards of appellant. This was beyond the ravine. The evidence shows that up to the place where plaintiff fell the ground was all leveled off. Near the depot it was covered with sand and down toward the trestle with coal cinders. Appellant maintained a switch which crossed the main track close to the place

where they formed a V. Besides, the fact that these trains usually stopped across the trestle and started from that point indicates that the intervening space was in use by appellant in business of this character. No effort was made by appellant on the trial to show by evidence that the place of injury was not in its yards.

*Affirmed.*

### ON MOTION FOR REHEARING.

In the opinion delivered in this case, there are some expressions to the effect that the conductor accompanying plaintiff should have used reasonable care in guarding him against this accident. By this we did not mean that his duty was anything short of the high degree of care which the carrier and its servants owe a passenger. The entire opinion negatives such view.

In some way the court came to misconceive the amount of the verdict, which was for $5000 instead of $4000. It was with some difficulty that we approved the verdict for the latter amount, and now we shall require appellee to remit $1000 within ten days, in which event the motion will be overruled and the judgment affirmed for $4000; otherwise the motion will be granted and the judgment reversed.

*Ordered accordingly.*

Writ of error refused.