SAN ANTONIO TRACTION CO. v. CRISP.

(Court of Civil Appeals of Texas. San Antonio. Dec. 20, 1913.)

1. DAMAGES (§ 100*)—PERSONAL INJURIES—MEASURE OF DAMAGES—LOSS OF EARNING CAPACITY.

Where a person sustaining a personal injury had gone into the saloon business because it was easier and more lucrative than working at his trade as a carpenter, and only resorted to the carpenter's trade to recoup his broken fortunes to enable him to re-enter the saloon business, his lessened earning capacity, in awarding damages, must be tested in connection with his occupation as a saloon keeper.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 237–241; Dec. Dig. § 100.*]

2. DAMAGES (§ 132*)—PERSONAL INJURIES—EXCESSIVE DAMAGES.

A saloon keeper was thrown to the ground while attempting to alight from a street car, and his left hand and shoulder were injured. The third finger was crushed in part, and the second and third fingers were stiffened so that the grip of his hand was much impaired. He suffered great pain. He had no extra bartender in his saloon except for about two months. He had an extra porter since the accident. *Held,* that a verdict for $12,650 was excessive and must be reduced to $6,000.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

3. TRIAL (§ 315*)—MODE OF REACHING VERDICT—PERSONAL INJURIES—DAMAGES.

Where ten of the jurors desired to award to plaintiff suing for a personal injury $15,000, the full amount claimed in the petition, and thereafter the jurors found the average of the amount each desired to give to be $12,638, and then, for the sake of good measure, made the verdict $12,650, the facts indicated a disregard of the rights of defendant, and a prejudice against him warranting the reduction of the verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 740–742; Dec. Dig. § 315.*]

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by J. T. Crisp against the San Antonio Traction Company. From a judgment for plaintiff, defendant appeals. Conditionally affirmed.

Templeton, Brooks, Napier & Ogden, of San Antonio, for appellant. James Routledge and J. R. Norton, both of San Antonio, for appellee.

FLY, C. J. This is a suit for damages growing out of personal injuries inflicted upon appellee through the negligence of appellant. The cause was tried by jury, resulting in a verdict and judgment for appellee in the sum of $12,650. The facts indicate clearly that appellee was injured through the negligence of appellant.

The facts in this case are that on the night of January 7, 1912, appellee, who was riding in the front vestibule of a street car with his dog, a suit case and some birds he had killed, attempted to get off the car at the corner of Market street and Main plaza in San Antonio, and, just as he started to get off, the car was moved with a jerk that threw him to the ground and hurt his left hand and shoulder. The bone of the third finger in the middle of the left hand, above the knuckle, was broken by the fall. The second and third fingers were stiffened by the breaking of the bone of the third finger, so that the grip of the hand is much impaired. The condition of the hand is permanent. The bone of the third finger was crushed into fragments for about an inch. He suffered great pain from the wound. Appellee is a saloon keeper, and had no extra bartender in his saloon, except for two months and three days. He has had an extra porter since the accident. He had one regular bartender before the accident, and had only one after two months from the accident. Appellee's wife testified: "After the accident, Mr. Crisp was walking around all the time, he spent some time of the next day at his place of business, I think—he looked after his business—and I think he went to his business every day following the accident." About two weeks after the accident, appellee went to Refugio county on business, and when he got back he struck a man with his right hand. Appellee was at one time a carpenter and contractor, but for three years had been in the saloon business. Appellee went into the saloon because he thought it easier and more lucrative than working as a carpenter or contractor. There was no testimony tending to show that he ever intended to return to the carpenter's business. He was an experienced saloon man before he opened his business in San Antonio. He went back to the carpenter's business after he broke in the saloon business in Milwaukee. He stated: "I have been working at the carpenter trade since I was 18 years old. I worked at it after I went broke in Milwaukee, I went back to Glasgow; and as soon as I got back on my feet I jumped back into the saloon business."

[1, 2] Under the facts of this case, appellee's lessened earning capacity must be tested in

connection with his occupation as a saloon keeper. After he has forsaken an occupation, it cannot be applied as the test for his earning capacity. His favorite occupation seems to be the saloon business, the carpenter's trade being used merely as a means to recoup his broken fortunes so as to enter the saloon business. However that may be, the verdict for $12,650 is such as to shock the mind and conscience of a court, and clearly indicates prejudice upon the part of the jury. Whether he should be considered saloon keeper or carpenter, the verdict is unconscionably large, and cannot be permitted to stand. While the peculiar facts of each case must govern in fixing the amount of damages, and precedents have but little authoritative value, still the judgment of courts in similar cases should at least be persuasive and of some assistance in arriving at a proper conclusion. In the case of Railway v. Turney, 33 Tex. Civ. App. 626, 78 S. W. 256, the injuries were very similar to those in this case. In that case the two middle fingers of the right hand were stiffened, as are the two middle fingers of the left hand in this case. The capacity of the appellee to perform his work in that case was decreased fully as much as the capacity of the appellee in this case. The appellee in that case suffered as much, if not more, than the appellee in this case, and yet in that case this court required a remittitur of $1,000 from a $5,000 verdict. The cited case was decided about ten years ago, and we are aware that much larger verdicts are approved now than at that time, which is justified, perhaps, by the increased cost of living and the diminished purchasing power of money, but if a verdict for $4,000 was with difficulty affirmed ten years ago for two stiffened fingers on the right hand, a verdict for $12,650 for two stiffened fingers on the left hand should not be countenanced. There has been no such increase in the earning power of men or in the cost of living as would justify any such verdict.

[3] It is rarely the case that a party seeking damages for personal injuries has the faintest expectation of recovering the maximum amount named in the petition. The high sum usually alleged is intended merely to form a basis for such damages as may be proved. In this case, however, in spite of the fact that there was no basis in the evidence for a verdict for the $15,000 claimed in the petition, there were ten of the jurors who favored a verdict for every cent claimed by appellee, and that sum was made to affect the verdict by an average being struck between the sums desired by the ten, and the lower ones desired by the remaining two jurors. After they found the average to be $12,638, they then, for the sake of good measure, put in $12 so as to make it $12,650. The very fact that ten of the jurors on the first ballot desired to find the limit claimed, under the facts, showed prejudice against appellant. While the excess in the verdict was largely increased by the prejudiced undertaking on the part of some of the jurors to give appellee all demanded in the petition. which was used in striking an average, the jurors testified that they did not bind themselves to abide by the amount found after adding all the sums and dividing by 36. This is evidenced by the fact that, after the result had been obtained, $12 was added for appearance's, if not conscience's, sake. The reason for adding the $12 was $12,638 "would look funny, look ridiculous." These circumstances indicate an utter disregard of the rights of appellant; still the verdict was not arrived at by lot.

If a remittitur of $6,650 is entered by appellee within ten days, the judgment will be affirmed for the amount remaining; if not, it will be reversed, and the cause remanded.