## H. M. GREENWAY v. TAYLOR COUNTY, Iowa, Appellant.

**Personal injury:** EVIDENCE OF PAIN. In a personal injury action it is competent for a physician to state that the injuries were such as are likely to cause pain.

**Expert evidence:** COMPETENCY. Where a witness testified that he had had large experience in the construction and repair of bridges, his testimony as to the method by which he would examine a bridge to ascertain the condition of its timbers was proper, as the subject was one not familiar to the ordinary juryman; and it was competent on the question of negligence in failing to repair the bridge.

**Instructions:** HARMLESS ERROR. Reference by the court to its instructions as "some observations bearing upon the issue" is held not to have been misleading and was therefore harmless, though the expression is not to be commended.

**Bridges:** CARE IN DISCOVERY OF DEFECTS: EVIDENCE. It is proper for the jury to consider the history of a bridge, the time of its construction, reconstruction and repair, in determining whether due care was used to discover defects therein.

**Instruction:** DAMAGES: LOSS OF EARNING CAPACITY. While it is improper for the court in a personal injury action to limit plaintiff's recovery for loss of earning capacity to the occupation in which he has been engaged, still his diminished earning power in that occupation may be considered in determining the damages, especially where there is no evidence of former earning capacity in any other avocation; and an instruction to that effect is proper, although it might well have gone farther and called the attention of the jury to the possibility of plaintiff's ability to earn money in some other avocation.

**Same:** LOSS OF FUTURE EARNINGS: PRESENT WORTH. Where the jury was told to allow the plaintiff such sum as would fairly compensate him for the injury suffered, and the court defined the general basis on which his right of recovery was founded, all of which had reference to the present recovery of future earnings, it was not necessary to specially limit the amount of recovery to the present worth of loss of earnings in the future, in the absence of such a request.

*Appeal from Adams District Court.—*HON. H. M. TOWNER,
Judge.

WEDNESDAY, OCTOBER 27, 1909.

ACTION for damages resulted in judgment as prayed.
The defendant appeals.—*Affirmed.*

*M. R. Brant,* County Attorney, *W. E. Miller* and
*Maxwell & Maxwell,* for appellant.

*W. M. Jackson* and *Meyerhoff & Gibson,* for appellee.

LADD, J.—While driving over what is known as the
Dennis bridge in Taylor County, June 5, 1907, that struc-
ture collapsed, and plaintiff with his team was precipitated
to the bed of the creek below, a distance of about sixteen
feet. The verdict fixed the damages resulting from the in-
juries received at $5,000, and this is said to be excessive.
Plaintiff fell some feet away from the team, and immediately
undertook to let them loose and called for help. He did not
suppose himself much hurt, and rode home in a neighbor's
buggy. But he did not sleep well that night, and in the
morning a physician was called. He was confined to the
house for about two weeks, and during that time suffered a
great deal of pain, especially in the side and back. He has
been unable to perform manual labor since, though he has
dealt in stock to some extent, as he did previous to the ac-
cident. While somewhat improved at the time of the trial,
some eight months after the accident, his appetite was poor,
he did not sleep well, and the condition of his knee was
such as to interfere with locomotion, and pained him when
riding in a buggy. Blood was discharged with urine for
about a week after the injury, and one of the physicians
who examined him testified that owing to the condition of
his kidney, pus still appeared in his urine in varying

quantities. He has suffered constant pain in the region of the kidneys, and is compelled to arise several times during the night to urinate. A large space on his side was sore and so continues. He has trouble with his stomach, and the knee grates, and sometimes he is able to use his knee with comparative freedom from pain, but when the knee joint grates, he is unable to bend it.

The physician who called testified that upon examination he found a great deal of tenderness over defendant's body, especially all the larger muscles; that on the right leg below the knee was a bruise; that on the left side below the occipital arch of the ribs he found a place which would give way readily, and concluded that the cartilage of the ribs was torn loose; that there was no lesion at the knee. The swelling of the knee has disappeared, but a squeaking or crepitus has become marked, and the physician thought that the breaking of the cartilage or breaking of the bone under the kneecap might account for this. An examination was made with the X-ray machine and both he and another physician observed what looked to be an enlargement of the spleen. They also observed that the upper part of the patella was downward farther on one side than on the other, and that the muscles were pushed upwards, and that the lower end of the femur was enlarged. The doctor first mentioned was of the opinion that plaintiff had suffered much pain, but was unable to say that the injuries would prove permanent. His temperature had continued from one and one-half to two degrees higher than normal. The second physician thought he observed a swelling below the kneecap which was very tender, the grating of the knee, and thought this would interfere with locomotion. Both considered the injury to the knee permanent, but thought it might be improved by an operation. The plaintiff was examined by still another physician at the Cottage Hospital in Creston. He testified that the stomach was moved over to the right more than it should be; that he had a

kidney that was producing pus in the urine in varying amounts; that he attempted to wash out the stomach with a tube, but that the blood flowed so copiously that he concluded it wise to desist; that there was an exaggerated reflex in the right kidney; that the patella was inclined to stick forward, and then jump up again when pressed downward, and that there was a pronounced grating sound in the joint; that the X-ray picture indicated a displacement of the semilunar cartilage that ought to stay at one place; that it would float around and then stop; that a second examination confirmed what he had discovered at the first. He was of opinion that possibly a piece of fiber or cartilage had become detached in the knee joint so as to move from one place to another, and that if so, a surgical operation would relieve him. He thought the condition of the kidneys a menace, but that it might not be permanent. On the other hand, three physicians who examined the plaintiff in behalf of the county were able to discover no injury to the knee nor to his side, and upon examination of the urine found it to contain no pus. This is all the evidence bearing on plaintiff's condition, save some testimony that he appeared haggard, and was unable to perform manual labor. He was a farmer, and sometimes bought and sold stock. He had continued in the latter business, but had experienced some difficulty in getting about, making use of a cane, and often being compelled to get out of his buggy and walk owing to pain in his knee. The injury to the knee was permanent, though the doctors united in the opinion that its condition would be improved by an operation. All seemed to think that other conditions would be remedied by treatment. No claim was made for future pain, and the expenses for treatment and medicine have not exceeded $180. The jury might have found him to have suffered pain, and to have been injured as testified to by plaintiff's witnesses, and, having so found we are not inclined to interfere with the verdict.

I. The attending physician who treated plaintiff up to within three weeks prior to the trial was asked, "What do you say as to whether he has suffered, during the time since this injury, a great deal of pain?" Over objection the witness answered in the affirmative. This was equivalent to inquiring whether the injuries were of such a character as would be likely to cause pain, and was competent evidence. In *McDonald v. Railway,* 88 Iowa, 345, evidence of the physicians that the injured person seemed to suffer pain was held admissible. In *Rosevelt v. Railway* (Super. Ct.) 13 N. Y. Supp. 598, affirmed in 133 N. Y. 537, (30 N. E. 1148) the court ruled that the physician might testify that the plaintiff suffered pain as did another court in *C. B. & Q. Ry. v. Martin,* 112 Ill. 16. In *Holman v. Railway,* 114 Mich. 208, (72 N. W. 202) the physician was allowed to give his opinion as to whether the injured person was still suffering pain, and this was approved. Some courts have approved of like testimony by nonexperts. See *Hall v. City of Austin,* 73 Minn. 134, (75 N. W. 1121;) *Werner v. Railway,* 105 Wis. 300, (81 N. W. 416.) We think it entirely competent for the physician to say whether in his judgment the injuries of a person are such as would be likely to produce pain.

*1. PERSONAL INJURY: evidence of pain.*

II. A witness named Johnson, after testifying that he had had a great deal of experience in the construction and repair of bridges, was asked, in substance, to explain the method by which he would examine a bridge to ascertain the condition of the timbers therein. Objection that this was not a matter for expert testimony was overruled, and rightly so. The information sought was not familiar knowledge to the ordinary juryman, and the evidence elicited was competent as bearing on the issues as to whether the county was negligent in not discovering and repairing the defective timber in the bridge before the accident.

*2. EXPERT EVIDENCE: competency.*

III.   After stating the issue and with precision precisely what plaintiff must prove in order to recover, and also the duty of the county with respect to keeping bridges in repair, the court said: "A failure on the part of any county to keep any of its bridges in repair constitutes negligence on its part for which it may be held liable for damages.   Some observations bearing upon this issue, as particularly applicable to the case at bar, are here submitted for your consideration."   The last sentence is criticised on the ground that what is said in the two instructions following would be construed by the jury merely as suggestions, and not as binding instructions.   They defined with some degree of particularity the obligations of the county and its duty with respect to the construction, repair, and inspection of bridges, and clearly indicated under what circumstances it would be charged with notice of the defect in a bridge, and within what time it was required to repair the same. Though allusion to those instructions as "some observations" is not to be commended, the jury, because of their character, could not have been misled thereby into belittling their importance, or into construing them otherwise than directly applicable to the issues, and as directing them with respect to the law of the case.   No prejudice resulted from such characterization of the instructions.

3. INSTRUCTIONS: harmless error.

IV.   In the fifth paragraph of the charge the court recited that the bridge had been erected for many years, and said that this might be taken into consideration in determining the amount of care the board of supervisors were bound to exercise in discovering defects.   It is said this was erroneous because the bridge had been reconstructed within five years.   It was erected thirty years ago, had been rebuilt fifteen years later, and five years previous to the trial all but a small portion of it had been replaced with new timber.   The particular "batter brace"

4. BRIDGES: care in discovery of defects: evidence.

which was rotten inside, the breaking of which caused the accident, had not been replaced. It was proper for the jury to take into consideration the history of the structure in determining the care defendant was bound to exercise in discovering defects therein. Even though rebuilt five years previous to the trial, some of the old material was used, so that the fact that this had been in use so many years was an important circumstance bearing on the degree of care exacted. The exception is not well taken.

V. In the seventh paragraph of the charge, the court instructed the jury that:

If you find plaintiff was injured by reason of the defendant's negligence, and without negligence on his part which contributed to his injury, you may then proceed to a consideration of the plaintiff's damages. In fixing such amount you should allow him such sum as will fairly and reasonably compensate him for the injury received. In so doing you may take into consideration the pain and suffering of body and mind incident to such injury; the injury to the knee, and internal injuries, if they are shown; his expenses incurred for medical care and attendance and medicine; and, if you find such injury continuing and permanent, that prior to such injury he was capable of earning wages by manual labor, and that such injury has in whole or in part incapacitated him from performing manual labor, then such diminished earning capacity may be taken into consideration in estimating plaintiff's damages. And in this connection plaintiff's expectancy of life, as shown by mortality tables, may be considered. But in this connection regard should be had to the probable time during such expectancy of life that plaintiff might be expected to be capable of performing manual labor on account of age and natural infirmities incident thereto. And if the jury find that the plaintiff is suffering from diseases or infirmities not caused by the accident complained of, such fact should not be considered to the enlargement of the damages allowed.

5. INSTRUCTION: damages: loss of earning capacity.

The criticisms of the instruction are (1) that the diminution of earning power, resulting from the injury, is limited to that at manual labor; and (2) that it does not limit the amount to be awarded to the present worth of loss of earnings in the future.   As contended, the instruction contains no reference to the possibility of earning capacity in intellectual or business pursuits in the future and it is true that when a person is disabled from following his ordinary avocation, especially when his expectancy in life exceeds thirty years, it ought not to be assumed, in estimating the damages resulting from such disability, that he will engage in no other pursuit, nor that, if unable to do manual labor, he may not earn money at some intellectual employment.   Nor should definite proof of the particular occupation for which he may be suited be exacted.   Ordinarily the trial occurs shortly after the injury, and before recovery such as may be possible has been effected.   It usually is too soon for the serious contemplation of another avocation, and neither the injured person nor the wrongdoer is able to make a showing at all satisfactory of earning capacity in a pursuit other than that previously followed.   But it does not follow that because of this situation, the possibility of earning money at other employments should be excluded from or ignored by the jury.   This could not be done on the assumption that one incapacitated from continuing in his former avocation will thereafter lead a life of indolence.   In the infinite variety of employments in this life there is something for every one to do, and, even in the absence of evidence pointing out an avocation suitable to one of impaired capability, the jury may, and should, take into account the possibility of him engaging in some useful occupation.   In other words, the loss of earning capacity or power generally, rather than in a particular avocation, is that for which compensation is awarded.   *O'Connor v. Railway,* 144 Iowa, 289.

Had the jury been restricted to the consideration of the decrease of earning capacity at manual labor, the instruction must have been regarded as erroneous. *Laird v. Railway,* 100 Iowa, 338; *Trott v. Railway,* 115 Iowa, 87. But it goes no farther than to say that "such diminished earning capacity may be taken into consideration in estimating plaintiff's damages." Surely the circumstance that his ability to pursue his usual avocation had been impaired should be considered. Presumably he was engaged in a pursuit for which he was best suited, and if the injury merely decreased his earning capacity therein, or wholly disabled him so that he must engage in another employment for which he was not so well adapted, he was damaged. Moreover, on defendant's objection, the only evidence of his former earning capacity adduced was that at manual labor, though counsel seemed to have construed the ruling of the court too narrowly (*Mitchell v. Railway,* 138 Iowa, 283), and for such labor he appears to have been wholly disabled, but continued to deal in stock. There was no proof concerning his earnings as a stock dealer. So that the instruction merely directed that what the evidence tended to establish might be considered. The next to the last sentence in the instruction relates to the time he might have performed manual labor but for the injury, and has the approval of *Bettis v. Railway,* 131 Iowa, 46. The instruction was correct, then, as far as it went, and it may be conceded that the court might well have gone farther, and directed the attention of the jury to the possibility of the plaintiff earning money in some other avocation. But such possibility was a matter of common knowledge, and as the jurors were cautioned that he was to be compensated for the injury suffered only, it ought not to be assumed that they ignored what every one else knows; i. e., that, even though disabled from doing manual labor, the door to all other avocations of life had been closed to him. Because of this being common knowledge, omission

to especially direct the jury's attention thereto in the absence of a request can not be denounced as error. See *Barnett v. Schlapka,* 208 Ill. 426 (70 N. E. 243); *Ft. Worth & D. C. Ry. Co. v. Robertson,* 16 S. W. (Tex.) 1093 (14 L. R. A. 781).

Nor was there error in omitting specific instructions with respect to the present worth of loss of future earnings. None was requested, and a refusal appears to be necessary as a basis of predicating error on such omission where estimation at present worth is not obviated by the language of the instructions given. *Hutcheis v. Ry.,* 128 Iowa, 279.

6. SAME: loss of future earnings: present worth.

The jury was told to allow plaintiff such sum "as will fairly compensate him for the injury received" and "the general basis on which the right to recover is founded." This had reference to the present recovery for future loss of earnings, as well as for other elements of damages suffered, and it may well be assumed that the jurors appreciated, without explicit explanation, that they were to estimate the present value of future earnings lost to the injured person. Such was the ruling of this court in *Clark v. City of Cedar Rapids,* 129 Iowa, 358, 362, in approving like decisions in *Gregory v. Railway,* 126 Iowa, 230, and *Hutcheis v. Railway,* 128 Iowa, 279. See, also, *Spaulding v. Railway,* 98 Iowa, 219, and *Lowe v. Railway,* 89 Iowa, 420. Attention of the jury, however, may well be directed to their duty to allow only the present worth of future earnings lost because of the injury, and this was all intended to be held in *Williams v. Clarke County,* 143 Iowa, 328.—*Affirmed.*