NELLIE MORRIS, Appellee, v. WALTER LA BAHN et al., Appellants.

DAMAGES: Evidence—Permanent Injury.    Evidence reviewed, and
1  held to justify the submission of the issue of permanent personal
   injury and future disability and pain.

TRIAL:   Instructions—Applicability to Pleadings.    Instructions re-
2  viewed, and held to present plaintiff's plea of permanent injury
   substantially as alleged in the petition.

DAMAGES: Permanent Injury—Life Tables Not Essential.   The intro-
3  duction of life tables is not essential to the recovery of damages
   for permanent injury.

TRIAL:  Instructions—Defining Terms—''Preponderance of Evidence.''
4  Reversible error does not result from defining ''preponderance of
   evidence'' as meaning *''the greater weight of the evidence,—not the
   greater number of witnesses,''*—when, from the instructions as a
   whole, the jury could not have understood that the *number* of wit-
   nesses was wholly immaterial.

APPEAL AND ERROR:   Harmless Error—Errors Favorable to Com-
5  plainant.   An appellant may not have a reversal on the basis of
   indefinite, inexplicit, and incomplete instructions *of which he is the
   sole beneficiary.*

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

SEPTEMBER 23, 1922.

ACTION by plaintiff to recover from both defendants dam-
ages for personal injuries received by her while a passenger in
a taxicab operated by Walter La Bahn, defendant, which col-
lided with a taxicab operated by defendant Yellow Taxicab
Company.  The case was tried to a jury.  Verdict was returned
against both defendants in the amount of $4,106, on which judg-
ment was rendered.  Defendants appeal.—*Affirmed.*

*Jepson, Struble & Anderson, Shull, Stilwill &  Shull,* and
*S. F. Wadden,* for appellants.

*Wilbur Owen,* for appellee.

ARTHUR, J.—I. Facts necessary to be stated in the first instance are: On the morning of August 23, 1920, appellee was a passenger in a cab operated by the appellant Walter La Bahn, the driver being George Echinroade. While a passenger in said cab, being driven to her destination, at the intersection of Nebraska and Fourth Streets in Sioux City, Iowa, the taxicab in which appellee was riding came into collision with a taxicab owned by appellant Yellow Taxicab Company, coming from the north, on Nebraska Street. Fourth Street runs east and west, and Nebraska Street extends north and south. In the collision, the cab in which appellee was riding was violently smashed and overturned, and appellee was precipitated to the floor of the cab with force and violence, and suffered injuries. She alleges that she suffered severe bruises, contusions, nervous shock, and injury to her back, spine, and kidneys, and particularly suffered contusion in the pelvic region, causing traumatic sacro-iliac dislocation of the ilium and sacrum, was rendered unconscious, and was removed to a hospital. She alleges that the injuries were painful and severe, causing her much pain and mental and physical distress and pain in the affected parts, particularly in the region of the sacro-iliac dislocation; and that she had been under the care of physicians ever since her injury, and had been obliged to be put into a harness, or adhesive straps, in an endeavor to bring about a proper union of the dislocated parts; and that she will continue to suffer pain and weakness in the affected parts, and that the sacro-iliac injury is permanent; that, by reason of said injury, she was for some time totally incapacitated from pursuing her usual vocation, which was that of proprietor and housekeeper of the Capital Hotel, and that she would continue to be almost wholly unfitted and incapacitated from performing her usual work and labor; that, prior to said injury, she was a strong, healthy woman,—never had suffered from any traumatic injury nor from any nervous trouble; but that since, she has continuously suffered from nervous strain and shock, has suffered attacks of nervous prostration and hysteria, and will continue to so suffer for an indefinite time in the future.

Appellee alleged that the accident and collision and consequent injuries were caused by the concurrent negligence of the

drivers of each of the taxicabs in operating and driving their respective cars at a dangerous, unlawful, and reckless rate of speed, and in not observing due care and caution in the operation of the same, and in not keeping a proper lookout to avoid collisions at street intersections. Alleging, separately and particularly, negligence of the Yellow Taxicab Company, appellee states that, notwithstanding that said intersection at Fourth Street and Nebraska Street was a dangerous one, where other vehicles were likely to be encountered at any time, and where the view was obstructed by high buildings on each corner, built flush with the lot lines, the driver of the yellow cab approached the intersection at a dangerous and reckless rate of speed, in excess of 30 miles an hour, and struck the cab in which she was riding with such force and speed as to upset it; that said yellow taxicab was not being driven "in a careful and prudent manner, and at a rate of speed that would not endanger the life or limb of any person," as by law required; that the driver of the yellow taxicab approached said intersection without giving any warning of his approach, did not have his car under control, did not reduce the speed of his car to a reasonable and proper rate, as required by law; but that, on the contrary, when he saw that a collision was imminent, he made no attempt to stop or reduce the speed of his car, in order to avoid a collision, until after he was within a few feet of the car in which appellee was riding, and did not attempt to avoid a collision by turning his car to the left, so as to clear the other car.

Alleging negligence particularly as to the driver of the La Bahn car, in which she was riding, she states that the driver of the car was negligent in that he failed to so operate, manage, and run the same as to safely carry the plaintiff to her destination, without harm and injury; and that the driver of said car was not operating the same in a careful and prudent manner and at a rate of speed that would not injure the life or limb of any person, as the law required.

She claims items of damages for doctors, medicines, bandaging, and adhesive strapping treatments in the sum of $200, and stated that she would continue to require such surgical and medical treatment for an indefinite time in the future; "that the reasonable value of plaintiff's services to herself in the

avocation in which she was engaged, to wit, proprietor and housekeeper of the Capital Hotel, is $26 per week; and that plaintiff was totally incapacitated from performing any such services for a period of six weeks after said accident, and was obliged to hire a woman to perform such services, and has been damaged, on account of such loss of earning capacity, in the sum of $156; that, since said injury, she has been unable to perform the usual work and labor attendant upon her duties as housekeeper, and will continue to be unable to perform such work and labor for an indefinite time in the future; that her inability to perform her usual work and labor is of a permanent character, and is the result of said injury; and that she has been damaged thereby in the sum of $3,000.''

For physical and mental suffering, past and prospective, she demanded the sum of $2,000.

Appellant Yellow Taxicab Company denied generally the allegations of appellee, and alleged that the injuries which plaintiff suffered were caused solely by the negligence of appellant La Bahn, and the manner in which his car was operated.

Appellant La Bahn denied the allegations of the petition, and alleged that the cause of the accident was the negligence of appellant Yellow Taxicab Company, and stated the particular negligence of which he charges that the driver of the Yellow Taxicab Company was guilty, as follows: That the yellow taxicab was operated in a careless and negligent manner, and that, at the time of the collision, the yellow taxicab was being driven at a high and reckless rate of speed, not less than 30 miles an hour; that the yellow taxicab was being driven in a manner contrary to the ordinances of the city of Sioux City, in that it was being driven at a rate of speed prohibited by said ordinance; that the driver of the yellow taxicab could have avoided the accident, up to the actual collision; but that the driver of the yellow taxicab recklessly and negligently attempted to drive the said automobile upon and across the intersection at Fourth and Nebraska Streets, when the driver of the Walter La Bahn cab, in the exercise of due care, had already started to cross, and had almost completed the crossing of said intersection; that the yellow taxicab was at least 50 yards from said intersection at the time that the La Bahn automobile commenced to cross the in-

tersection; and that it was only through the reckless and negligent failure of the driver of the yellow taxicab to check his excessive rate of speed and to turn to the left, that the accident and collision resulted; that the driver of the yellow taxicab did not give any warning or signal of any kind, upon approaching said street intersection; and that said driver did not have his car under control, in approaching said street intersection; and that the driver did not reduce the speed of his car to a reasonable and proper rate, as by law required; and that said driver failed to keep a proper lookout to avoid a collision at the street intersection.

Appellee, Nellie Morris, testified, in substance, that she left her hotel at about 5:20 in the morning, to drive to the Milwaukee depot, and that, in so doing, she went west on Fourth Street; that, just as she got to Nebraska Street, she saw the yellow taxi coming down on the west side of Nebraska Street, going south, "coming down terribly fast;" that the car in which she was riding was at about the middle of Fourth Street. She testified:

"I knew we were going to get hit. My driver kind of stopped, and then put on the gas, and started the car going fast. The yellow car did not make any effort to turn out, and I knew we were going to get hit; and that is all I knew until we were in the hospital. I did not observe any effort on the part of the yellow car driver to stop. My driver made no effort to stop. He must have seen he was going to get hit, and tried to avoid it by going fast."

There is conflict in the testimony as to which driver was at fault,—negligent,—and consequently, as to which one of the defendants was really responsible for the collision, or whether both drivers were negligent, and consequently, their masters liable. Appellant Yellow Taxicab Company claims that it was not to blame, but that the fault lay with the driver of the La Bahn car, who was driving west on Fourth Street at a speed of 20 to 35 miles an hour, at the time of the collision, as testified to by various witnesses.

Appellant Walter La Bahn asserts that his driver was not negligent, and that the collision occurred, and consequent injury to appellee, solely because of the negligence of the driver

of the yellow taxicab; that the proximate cause of the accident and consequent injury was the negligence of the Yellow Taxicab Company, which particulars of alleged negligence are hereinbefore set forth.

Appellant Yellow Taxicab Company does not seriously contend that there was not sufficient evidence to warrant submission of the case to the jury on the question as to whether one or both of appellants were guilty of negligence which was the proximate cause of the accident and injury; although it moved for a directed verdict when plaintiff rested, and renewed the motion at the close of all the evidence, which motions were overruled.

Appellant La Bahn strenuously urged that there was no evidence showing that his driver was guilty of negligence, and that the evidence was not sufficient, as to his driver, to warrant submission of the case to the jury as to him. Appellant La Bahn moved for a directed verdict in his favor at the close of plaintiff's testimony, and renewed his motion at the close of all the testimony, which motions were overruled. Appellant La Bahn asks reversal largely on the claimed error of the court in not directing a verdict in his favor.

Appellee sustained some injuries as a result of the accident, and the extent of her injuries was for the jury to ascertain.

Appellant Yellow Taxicab Company, while not conceding the point, does not argue that the evidence was not sufficient, as to negligence of appellant and injury to appellee, to take the case to the jury. Appellant Yellow Taxicab Company relies upon claimed errors committed by the court in instructions to the jury. It is not claimed by either appellant that appellee was guilty of contributory negligence or imputed negligence.

II. As before stated, appellant La Bahn's principal complaint is that the court erred in overruling his motions for a directed verdict on the ground that the plaintiff failed to show that his driver was negligent in the operation and management of his automobile. He relies, to sustain this position, mainly on the testimony of plaintiff herself. It is true that plaintiff testified that the La Bahn car was being driven at about 15 miles an hour, and that, just before the car came to the intersection, the driver slowed up, and was only going from 8 to 10 miles per hour when he started to drive his car across the intersection;

that, when he was about in the center of the street, he seemed to make the car go faster; that her idea was that he was striving to avoid the accident; that she would not say that the car in which she was riding was being driven at a dangerous and reckless rate of speed; and that she did not think he was going so terribly fast. Echinroade, driver of the La Bahn car, testified that he diminished the speed of his car to about 8 or, 10 miles per hour, as he approached the intersection, and that he was going at about that speed as he started out across the intersection; that he saw the yellow taxicab coming south on Nebraska Street, and watched it all the time from the moment that he saw it; that it was some distance up Nebraska Street from the intersection when he first saw it; that, when he reached the center of Nebraska Street, he saw that the yellow taxicab was still coming, and he increased the speed of his car and turned to the left, in an attempt to avoid the collision. But witness L. E. Nelson, who stood near the corner of Fourth and Nebraska Streets, and saw the La Bahn car coming from the east on Fourth Street, testified that it was "going west on Fourth Street at a speed of 30 to 35 miles an hour. It did not at any time slow up the speed at which it was going." Lester Keene testified that he saw the La Bahn car coming into the intersection, and says it was traveling about 30 miles an hour. Clyde E. Rand, a witness who was riding in the yellow taxicab at the time of the accident, testified that the La Bahn car was "going at least 30 miles an hour." Another witness testified that the La Bahn car went 40 feet before it stopped, after the collision.

An examination of the testimony on this point convinces us that the court could not say from the evidence, as a matter of law, that the testimony was not sufficient to take the case to the jury on the question of negligence of La Bahn as to the speed and control of his car. There was such conflict in the testimony as to warrant submission to the jury.

Appellant La Bahn asserts that the plaintiff failed to take proper care of herself, succeeding the accident, and assigns as error refusal of the court to give an instruction requested by him, which, in substance, was that it was incumbent upon plaintiff to make use of reasonable means to effect as speedy and complete a cure as could reasonably be accomplished under all the

circumstances, and that, if she neglected so to do, and her injuries were aggravated thereby, she ought not to recover for injuries occasioned by such negligence. It is sufficient to say that we have carefully examined the record, and think the evidence did not call for such an instruction, and that it was not error to refuse it.

III. Both appellants assign as error the overruling of their motions, at the close of all the testimony, to strike from the petition and withdraw from the jury all allegations relative

1. DAMAGES: evidence: permanent injury.

to permanent injury to the sacro-iliac joint; and also, all allegations as to future disability and future pain and suffering, and inability of plaintiff to perform her usual work and labor; and the claim that such inability was of a permanent character. Appellants urge that there was no testimony to warrant the submission of these matters to the jury. We have examined the evidence carefully, and think there was ample evidence that appellee's disability would continue for an indefinite time in the future, to warrant the submission to the jury of such matters. The evidence left it in doubt whether there would ever be complete recovery. The record furnishes evidence that plaintiff's present condition might recur at any time, from overexertion or overwork, or in the event of pregnancy and consequent childbirth. Plaintiff was a married woman, 27 years old, and was the proprietor of a hotel of about 30 rooms, doing her own cooking, and looking after the renting of the rooms. She testified that, previous to the accident, she never had any nervous trouble, her health was good, and she was strong, and able to do heavy work.

There was no conflict in the medical testimony. Dr. Shuman made an X-ray negative, and testified that it "showed a distinct difference over the left side of the sacro-ilium joint, in comparison with the other side. There is a distinct difference between the left and right side, as shown by the X-ray. The ilium is the big bone. There are two of them, the right and the left, and where these are joined by bones to the spinal column is where the trouble is with this patient. It is a severe injury or dislocation."

It is true, as claimed by appellants, that Dr. Shuman testified that "indications now point to the fact that she is on the

road to a speedy and final recovery; that, as far as I am able to observe, she is making a good recovery." But Dr. Shuman also testified:

"I don't know how long it would be necessary to continue the treatment. These cases differ as to length of time necessary for recovery. I do not know and cannot say whether there will ever be a complete union of those joint-like bones. By complete union I mean one in which the union takes place in such a manner as not to produce pain when the plaintiff moves about on her feet, bending forward and backward."

Dr. O'Donohue, who made a diagnosis of the case, testified:

"On the physical examination that I made, I found that there was a point of intense tenderness over the posterior spine, over the left iliac joint. I found that, in listening over this area with a stethoscope, I could hear a distinct click when the limb was placed at right angles, and from an examination of the X-ray pictures, found evidence of a sprain in this joint."

It is true, as appellants claim, that Dr. O'Donohue testified:

"I could not say whether there will ever be a complete recovery, but I think there would be, after several months. In my opinion, she will be as strong and these bones will be as firm and strong after a few months as ever."

But Dr. O'Donohue also testified:

"If she became pregnant, it would be almost certain to bring back a recurrence of this trouble."

Dr. O'Donohue also testified:

"I say that, in four months' time, I think she would be free from pain. Not that she would be as strong as before the injury,—that is, if she does not attempt heavy work or extended walking."

In response to a direct question as to the permanency of her injuries, Dr. O'Donohue said:

"The patient should, in the course of several months, or possibly in the course of several years, recover enough so that she will not have pain, unless she should start doing rather arduous physical labor, or should be delivered of a child."

There was no claim made of total disability from carrying on the business of operating her hotel. The evidence showed that she was still operating it at the time of the trial; but ap-

pellee's claim was, as we understand it, that she was pursuing her usual vocation with decreased and impaired efficiency, which would continue for an indefinite time in the future.

Overruling appellants' motions to strike was not error.

IV. Appellants insist that there is a fatal variance between plaintiff's pleading of permanent injury and the statement of such issue in Instruction No. 1; that the instruction improperly advised the jury as to the claim made by the plaintiff, in that, in said instruction, the court makes the statement, "Plaintiff alleges that she will be unable to perform such labor for an indefinite time in the future, and is only able to partially perform her duties in looking after the said hotel business, and that the same is of a permanent character;" whereas, in her petition, plaintiff alleges that, "since said injury, plaintiff has been unable to perform the usual work and labor attendant upon her duties as housekeeper, and will continue to be unable to perform such work and labor for an indefinite time in the future, and she is only able to partially perform her duties of proprietorship in looking after the general supervision of her hotel; that her inability to perform her usual work and labor is of a permanent character."

2. TRIAL: instructions: applicability to pleadings.

The difference pointed out by appellants is that her claim in her petition is that her inability to perform her usual work and labor is of a permanent character; but the jury was advised that her claim was that she was permanently disabled in performing her duties in looking after her hotel business. We think the language "usual work and labor," found in the petition, may well be construed to include both her work as housekeeper and her duties as proprietor, when taken in connection with the last phrase of the preceding sentence; and that, when so construed, there is no inconsistency between the petition and the instruction. The instruction says:

"Plaintiff alleges that she will be unable to perform such labor for an indefinite time in the future, and is only able to partially perform her duties in looking after the said hotel business, and that the same is of a permanent character."

Counsel for appellants would limit the words "the same is of a permanent character," to disability to attend to her duties

as proprietor.   We think a fair construction is that they refer
to both her duties as housekeeper and proprietor.   We do not
see any serious discrepancy between the allegations of the peti-
tion on this subject and the language used in the instruction.
The one is not an exact copy of the other, but their meaning
is substantially the same, and we think it would not be possible
for the jury to be misled as to the issue.  · The instruction would
have been more satisfactory if it had followed more closely the
language of the petition, but we consider it a fair statement of
the issues.   In any event, it contained no prejudicial error.

V.   Both appellants assail Instruction No. 15, submitting
the question of allowance of damages: that is, instructions as
to the elements of damage the jury should consider, in arriv-
ing at a verdict.   It is urged that the court erred in such para-
graph, in telling the jury that, if it found that plaintiff was
entitled to recover, "you will also allow her for the impairment
of her earning capacity, for loss or damage to the same as is
reasonably certain from the evidence that she will suffer in
the future," for the reason that in the petition there was no
claim made for permanent injury which impaired her earning
capacity, and no claim in the petition that her inability to per-
form her usual work and labor in connection with her hotel
business had been impaired, and that there was no testimony
upon which the jury could base a finding that the earning ca-
pacity of appellee had been permanently impaired, or that she
had been so injured as that she would not, in the future, be
able to perform her usual work about her hotel, and no evidence
upon which the jury could find that she had sustained damages
because of permanent injuries claimed in the petition.

We have already discussed these same points, and held ad-
versely to appellants' claims.

Appellants further claim that that part of the instruction
was erroneous which authorized compensation for permanent
injury, for the reason that there was no testimony offered by

3. DAMAGES: per-     appellee showing the expectancy of her life, nor
manent injury:       any testimony showing that she would, for the
life tables not
essential.           rest of her life, be engaged in the hotel business,
and no showing that she would not, in some other occupation,
be able to earn fully as much as she did before the accident.

There is no merit in the contention that appellee should have used the life tables. *Beems v. Chicago, R. I. & P. R. Co.,* 67 Iowa 435; *Willis v. Schertz,* 188 Iowa 712. Neither is the in- struction open to the criticism lodged against it, that it limits the jury's consideration of appellee's ability to earn money, to her occupation of operating the Capital Hotel. In the instruc- tion it is said:

"She may maintain an action in her own right for injury disabling her from pursuing her employment, or causing her a loss of her earning capacity. * * * And you will also allow her for the impairment of her earning capacity for loss or damage to the same is reasonably certain from the evidence that she will suffer in the future."

We think this language did not restrict the jury, in its con- sideration, to any particular calling or occupation. The lan- guage is general, and applies to decreased earning capacity in any calling, and is in harmony with our holdings. *O'Conner v. Chicago, R. I. & P. R. Co.,* 144 Iowa 289; *Greenway v. Taylor County,* 144 Iowa 332. It was not incumbent upon appellee to introduce evidence as to her ability to earn money generally. The evidence shows that she was, at the time of the trial, en- gaged in operating her hotel, but with decreased efficiency. It was too soon for serious contemplation of another vocation, and to make a satisfactory showing of earning capacity in any other pursuit. *Greenway v. Taylor County,* supra.

VI. Appellants urge that the court erred in Paragraph 4 of instructions, because therein the court said, "By a prepon- derance of the evidence is meant the greater weight of the evi-

4. TRIAL: instruc- tions: defining terms: "pre- ponderance of evidence."

dence,—not the greater number of witnesses,"— for the reason, as appellants claim, that the in- struction gave the jury to understand that the number of witnesses used by either party was not to be considered in determining the case; and that the in- struction should have read:

"By a preponderance of the evidence is meant the greater weight of the evidence, *not necessarily* the greater number of witnesses."

It will be observed that the criticism is as to the omission of the words "not necessarily." It would have been better to

have included the words "not necessarily." Such an instruction usually contains these words. However, the omission of these words was not fatal to the instruction. The instruction should be read in connection with Instruction 16, wherein the jurors were told that they were the sole judges of the weight of the evidence and the credibility of the witnesses who had testified before them, and were instructed in a proper manner how to weigh the evidence, and to "give such weight and credit to the testimony of each witness as, under all the facts and circumstances in evidence, you believe it should receive." When both instructions are considered together, we think the jury was not misled, and that there was no prejudicial error committed. *Crowley v. Burlington, C. R. & N. R. Co.,* 65 Iowa 658.

VII. Appellants make several assignments of error against Instructions 9, 11, and 12, in so far as these instructions relate to the questions of imputed negligence and contributory negligence of the appellee. We do not deem it necessary to set forth these three long instructions. They are subject to the criticism made by appellants, of not being clear, explicit, and complete.

5. APPEAL AND ERROR: harmless error: errors favorable to complainant.

They are correct in their statements of abstract propositions of law. We think the appellants cannot complain of them. If appellee had been defeated in her case, she might have complained. The plaintiff was a passenger in the La Bahn car, which was a public conveyance, engaged in the carrying of passengers for hire, exercising no control over the driver, aside from telling him the destination to which she desired to be driven. Appellee testified:

"I did not give my driver any directions as to how fast to drive or what direction to go. I told him to go to the Milwaukee depot."

The negligence of the driver or employee of a common carrier is not imputable to the injured passenger, under such circumstances. *Cram v. City of Des Moines,* 185 Iowa 1292; *Little v. Hackett,* 116 U. S. 366.

The answer of each appellant alleged that the accident and consequent injury to the plaintiff "was caused *solely* by the negligence and carelessness" of its codefendant. The instructions given did not, we think, mislead the jury to the prejudice

of appellants. *Arnold v. Fort Dodge, D. M. & S. R. Co.,* 186 Iowa 538.

VIII. It is urged, but not argued, by appellants that the verdict was excessive, and that a new trial should have been granted for that reason. On a careful examination of the evidence, considerable of which is hereinbefore set out, we are not prepared to say that the verdict is excessive.

We have not discussed the many assignments separately, but have considered all of them, and our discussion fairly covers them all. We find no reversible error in the record, and no reason to disturb the verdict and judgment rendered thereon; and the judgment of the trial court is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.