Edward J. O'Conner v. Chicago, Rock Island & Pacific Railway Co., Appellant.

Personal injury: LOSS OF EARNING CAPACITY: INSTRUCTION. In a personal injury action the right of recovery for loss of earning capacity is measured by the impairment of capacity to earn money generally, regardless of the kind of occupation; and the jury should not be limited to a consideration of plaintiff's loss of earning capacity in his occupation prior to the injury, although there was no evidence of his ability to pursue his previous vocation or to earn money in any other.

Removal of causes: DIVERSITY OF CITIZENSHIP: PLEADING. To render an action removable to the Federal Court on the ground of diversity of citizenship, the diversity must exist both at the beginning of the suit and at the time of filing the petition for removal, and must be distinctly and positively alleged; it is not sufficient to allege that the parties are citizens of different States; nor will citizenship be inferred from an allegation of residence.

*Appeal from Scott District Court.*—Hon. J. W. Bollinger, Judge.

Tuesday, October 26, 1909.

Action for damages resulted in a verdict and judgment for plaintiff. The defendant appeals.—*Reversed* on rehearing.

*Carroll Wright, J. L. Parrish,* and *Cook & Dodge,* for appellant.

*Lane & Waterman,* for appellee.

Ladd, J.—Through negligence of an employee of·defendant, as was conceded in the answer, a baggage car in which plaintiff was engaged at his usual avocation was overturned, and he precipitated nearly the entire length of the car on his head, and articles in the car fell on him.· The testimony of physicians as to his condition as a result of the injuries is in sharp conflict. If the witnesses called by plaintiff are to be relied on, in connection with the evidence of himself and wife, he is in a deplorable condition. If the physicians of defendant are· right in the opinions they have expressed, little else than hysteria ailed him.

I.   The only matter submitted was the assessment of damages, and with reference thereto the jury was told that plaintiff was entitled to recover damages reasonably and naturally consequent of the injury caused

1. Personal injury: loss of earning capacity: instruction.

by the overturning of the car, to consider all the evidence bearing thereon, and was further instructed as follows: "What is the nature and extent of the injuries resulting to the plaintiff as the reasonable and natural consequence of the overturning of the car? What injuries has he thus far sustained, and to what extent is it reasonably certain that they will continue in the future? What is the nature and extent of the pain, mental and physical, which he has

endured, or will hereafter endure, if you so find? To what extent has he been disabled or incapacitated from pursuing his calling in life? These are questions you must determine. When you have carefully and fairly considered these matters, it is then for you to decide what will be the amount of your verdict." The instruction is criticized in that it limited consideration of loss in future earning capacity to employment in the occupation of plaintiff previous to the injury. In confining the jury to the determination of the question "To what extent has he been disabled or incapacitated from pursuing his calling in life?" in connection with those enumerated besides, any other inquiry was excluded, and there is no escape from the construction of the clause as stated. Counsel for appellee, by dissecting and reconstructing it, seem to have convinced themselves otherwise, but the jurors, who cannot be assumed to have been linguists or logicians, must have understood what the language indicates, namely, that impairment in capacity to follow the vocation he had been engaged in for twenty-three years was the element of damages to be taken into account by them, rather than impairment of his power generally to earn money. Because no evidence of his ability subsequent to the injury to engage in some other occupation was adduced, it was thought on the former hearing that the instruction might be sustained. Upon reconsideration, we are persuaded that this is not so. Up to the time of the trial he had been unable to engage in any employment, but this did not preclude the jury from concluding that, though he might not be able to act as train baggageman and express messenger, he might so far recover as to earn money at any of many other avocations in life. He was but forty-four years of age at the time of the injury, and though the evidence in his behalf indicated total disability, that introduced by defendant, while recognizing the serious nature of his condition, pointed to substantial improvement, if not complete

recovery. He was in possession of his faculties, though his mind may not have been quite so clear as formerly, and the jury was not bound to accept absolutely the theory of the one party or of the other as to his condition, but might well have concluded that, though his injuries were grievous and permanent, his condition unconsciously was influenced by introspection and by the pending litigation, and that with its final disposition and change in environment substantial improvement, if not restoration of his nervous system, were not only possible, but probable. If so, then the probability of his earning money in the future in some other calling should not have been excluded from consideration.

In *Trott v. Railway,* 115 Iowa, 80, an instruction limiting "the extent of plaintiff's earning power in the future to that of a laboring man" was held to be erroneous, on the ground that "he might be totally disabled from performing manual labor, yet be able to earn in other avocations." A like conclusion was reached in *Laird v. Railway,* 100 Iowa, 336, where the instruction was to "allow him only such sum as will compensate him for his loss in being disabled from pursuing his usual business or performing other manual labor," and this was construed to exclude consideration of ability to earn money otherwise than by manual labor as tending to lessen the damages to be awarded and it was adjudged erroneous. In *Bettis v. Railway,* 131 Iowa, 46, the instruction was approved because the reference to manual labor related to what he would have done but for his injuries, and nothing was said as to the character of labor which he might afterward perform. It is not the disabling to follow any particular vocation for which compensation is awarded, for this might do no more than interfere with the taste or ambition to engage in some particular pursuit, though this may be an element of damages, but it is the impairment of the capacity to earn money, generally, regard-

less of the kind of occupation, the lessening of the earning capacity, which is to be taken into account. This appears from the decisions cited as well as from *Morris v. Railway,* 45 Iowa, 29; *Cotant v. Railway,* 125 Iowa, 46, and *Mitchell v. Railway,* 138 Iowa, 283. The same rule prevails elsewhere. *McCoy v. Railway,* 88 Wis. 56, (59 N. W. 453); *Houston & T. C. R. Co. v. McCullough,* 22 Tex. Civ. App. 208, (55 S. W. 392); *Sioux City & P. R. Co. v. Smith,* 22 Neb. 775, (36 N. W. 289). The injured party may not have been receiving full compensation for such earning power prior to the injury, or he may have been receiving compensation in excess thereof subsequent to such injury, but the measure to be applied is not the difference in compensation received, but in the value of the power to earn. *Central Mfg. Co. v. Cotton,* 108 Tenn. 63, (65 S. W. 403); *San Antonio & A. P. Ry. Co. v. Turney,* 33 Tex. Civ. App. 626, (78 S. W. 256).

The rule is accurately stated in 6 Thompson, Negligence, section 7294: "The jury, looking to all the circumstances of the case—his former occupation and its nature, the money or other benefit derived therefrom, and the extent to which the capacity to follow that or any other calling for which he is fitted is impaired by the wrong of the defendant—must assess the damages at a sum which will compensate him for the injury suffered." It was not essential that speculative evidence be introduced by either party as to what occupation might prove suitable or congenial to plaintiff in event of the future improvement of his condition. Jurors are presumed to be familiar with the common affairs of life, and therefrom, in connection with a determination of the probable future condition of plaintiff, might in the exercise of their judgment estimate somewhat of the probabilities of the future. Who can say what any one will or can do on the morrow? Presumably there will be no change. But plaintiff's course

of employment had been interrupted, and there was no ground for supposing that he will take up the thread of life's work where severed by the accident, and the inquiry was not whether he would be able to enter into the employment of the express company again, but whether he will be able to engage in any vocation hereafter whereby he will be able to earn a remuneration. If so, this was proper to be taken into consideration by the jury as tending to lessen the amount of damages to be allowed, and in excluding it from such consideration there was prejudicial error. See *Greenway v. Taylor County* (decided at the present session) 122 N. W. 943.

II. Subsequent to the beginning of the action, and within the statutory period, defendant filed a petition for removal to the United States Circuit Court. This was accompanied by a sufficient bond, and, after asserting that the amount in controversy exceeded $2,000, stated: "That the controversy in said action is between citizens of different States, and that your petitioner at the time of the commencement was, and still is, a resident of the State of Illinois; that the plaintiff was then, and still is, a resident of the State of Iowa; that your petitioner at the time of the commencement of this action was, and still is, a corporation organized and existing under and created by the laws of the State of Illinois, and at said time and now has its citizenship, residence, habitat, and principal place of business in the city of Chicago and State of Illinois, and was and is a nonresident of the State of Iowa." Thereupon plaintiff filed a resistance, in which he alleged that defendant had been incorporated under the laws of Iowa, and was at the commencement of the action, and still continued to be, a citizen of Iowa. To this was attached the articles of incorporation of the Chicago, Rock Island & Pacific Railroad Company, an Iowa corporation, and articles of consolidation with the

2. REMOVAL OF CAUSES: diversity of citizenship: pleading.

Chicago, Rock Island Railroad Company, an Illinois corporation, all recorded in Scott County. The court denied the petition, and rightly. To render an action removable to the federal court on the ground alleged, diversity of citizenship must be made to appear to have existed, both at the beginning of the suit, and when the petition was filed. *Gibson v. Bruce,* 108 U. S. 561, (2 Sup. Ct. 873, 27 L. Ed. 825). It is not enough to say generally that plaintiff or defendant is not a citizen of a particular State, or not of the State in which the suit is pending. See *Cameron v. Hodges,* 127 U. S. 322 (8 Sup. Ct. 1154, 32 L. Ed. 132), where the court remarked: "This court has always been very particular in requiring a distinct statement of the citizenship of the parties, and of the particular State in which it is claimed, in order to sustain the jurisdiction of those courts." To aver that the controversy is between citizens of different States is but a conclusion, whether it precedes specific allegations of facts by way of explanation, or follows them as an inference to be drawn therefrom. *Neel v. Penn. Co.,* 157 U. S. 153, (15 Sup. Ct. 589, 39 L. Ed. 654); *Continental Life Ins. Co. v. Rhoads,* 119 U. S. 237, (7 Sup. Ct. 193, 30 L. Ed. 380); *Grace v. American Central Ins. Co.,* 109 U. S. 278, (3 Sup. Ct. 207, 27 L. Ed. 932). In the latter case the rule is quoted with approval from previous decisions that, "where jurisdiction depends upon citizenship of the parties, such citizenship, or the facts which in legal intendment constitute it, should be distinctly and positively averred in the pleadings, or they should appear affirmatively, and with equal distinctness, in other parts of the record." And further on it is said that an allegation that the controversy was between citizens of different States was but the pleader's unauthorized conclusion from facts previously stated. It cannot be inferred from an averment that one is a resident that he also is a citizen, for he then may be a citizen of a State other than that

of his residence. In *Continental Life Ins. Co. v. Rhoads,* 119 U. S. 237, (7 Sup. Ct. 193, 30 L. Ed. 380), the court said that: "Jurisdiction must appear positively. It is not enough that it may be inferred argumentatively." In the petition under consideration the place of plaintiff's residence is averred to be in Iowa, but from this citizenship of the State cannot be inferred. Even if the conclusion of the pleader might be considered, this merely states that the controversy is "between citizens of different States." This does not indicate of what State plaintiff was then a citizen, nor, even if he were then a citizen of a State other than that of defendant, that he was such at the commencement of the action. As the petition for removal was insufficient, in that it failed to allege of what State plaintiff was a citizen at the commencement of the action, we have no occasion to revert to other questions raised in argument, but see *Wasley v. Railway* (C. C.) 147 Fed. 608; *Patch v. Wabash Ry.,* 207 U. S. 277, (28 Sup. Ct. 80, 52 L. Ed. 204).—*Reversed.*