ELIZABETH BUFFALO, Appellee, v. CITY OF DES MOINES,
Appellant.

**EVIDENCE:** Relevancy, Materiality, and Competency—Custom in re
1   care of Streets.   Testimony tending to show that a municipality
was vigilant and watchful in the care of its streets is not admissible on the issue whether a specified dangerous condition did exist.

**EVIDENCE:** Documentary—Time Record of Work Done.   Whether
2   the official record of work done on a public street is admissible on
the issue of the dangerous condition of the street, *quaere;* but the
exclusion of such record is harmless error when said record is wholly
indefinite as to the *place* of work done.

**MUNICIPAL CORPORATIONS:**   Streets—Snow and Ice—Accumula-
3   tions From Adjoining Lot.   The city's obligation to avoid the
accumulation on its sidewalks of snow and ice in a rough and uneven
condition is not obviated by the fact that such accumulation comes
from snow melting on an *adjoining* lot.

**MUNICIPAL CORPORATIONS:**   Streets—Obviating Responsibility.
4   The court may very properly instruct the jury that the city may
not escape responsibility for the condition of its streets by merely
delegating the work to competent employees.

**DAMAGES:**   Evidence—Impairment of Earning Capacity. , Evidence,
5   in an action for personal injury, bearing on the existence of an
independent occupation other than that of a housewife, need not
be in great detail and definiteness in order to submit the item of
loss of time to the jury.

**MUNICIPAL CORPORATIONS:**   Streets—Notice of Defect.   A show-
6   ing that a dangerous condition existed in a sidewalk for some 6 or
7 days is ample to support a finding that the city authorities had

knowledge thereof, especially when such dangerous condition was only a few feet from the city's administration building.

**NEW TRIAL:** Verdict—Excessiveness—$7,500.  Verdict for $12,000 for personal injury, reduced by the court to $7,500, reviewed, and held nonexcessive.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

MARCH 7, 1922.

ACTION at law, to recover damages for personal injury. Verdict and judgment for plaintiff.  Defendant appeals.— *Affirmed.*

*W. E. Miller, H. H. Griffiths, C. A. Weaver,* and *Russell Jordan,* for appellant.

*John L. Gillespie,* for appellee.

WEAVER, J.—On December 24, 1919, the plaintiff was injured by a fall on a sidewalk in the city of Des Moines.  She alleges that such fall and injury were occasioned without fault on her part, by the city's negligence in permitting said walk to become and remain obstructed and dangerous, by an accumulation of ice and snow.  The defendant denies the allegations of the petition, and alleges that, if plaintiff did fall and receive injury, it was the result of her own contributory negligence. There was a trial to a jury, which found for the plaintiff, assessing her recovery at $12,000, which, upon order of the court, was reduced to $7,500.

The testimony offered on part of plaintiff tends to show that the sidewalk in question is on the north side of East Locust Street, immediately in front of the south side of the Municipal Building, in which are the quarters of the mayor and other officers immediately connected with the administration of the city government.  There was considerable evidence to the effect that, at the place of plaintiff's fall, there was an accumulation of ice and snow, which had been trampled under the feet of pedestrians for several days, causing it to assume a rough, uneven surface, with more or less ridges or elevations and depressions, and that, on December 24, 1919, such had been the

condition for several days.  According to the story of plaintiff, she was going west over this walk.  She noticed its rough and uneven condition, but, seeing others using it, she thought she could safely do so, and kept on her course, when, she says:

"I stepped on a ridge, and my foot turned over, and I slipped at the same time, and fell down. As I fell, I put my right hand back to save myself, and hit the rough ice.  After hitting my hand on the ice, all feeling went out, until after I was raised up.  The ice was all rough and ridged, and in places two or three inches higher than at other places.  It was frozen slush."

Her statement is corroborated by her daughter, who was with her, and by another witness who happened to be looking on, near at hand.  There had been no recent fall of snow or rain, and the jury could properly find from the evidence that the condition described had been a matter of several days' duration.  Plaintiff was a married woman, keeping the home for herself and family, and in addition to her family and home duties, was engaged in the work of a seamstress for wages.  The physician who was called to treat her testifies that:

"I found a double fracture, both bones between the elbow and wrist being broken.  Gave her an anæsthetic, reduced the fracture, and put it in a plaster cast.  On next day, examined it with an X-ray.  The bones were set in the best position we could obtain.  Both bones were broken and very badly splintered.  The wrist was misplaced and thrown outward, so, in reducing, it is very hard—impossible—to get the bones back where they were normally; but we got a very good position, too.  The way the bones were splintered, it was very hard to get a satisfactory job out of it. * * * There is no way known to medical science in which the fracture could have been reduced better."

Speaking of her present condition, the doctor says:

"The condition of her right hand, with reference to moving the fingers, is far from normal.  Should say it is off 50 per cent or better.  There has been an outgrowth of bony tissue there, and it has impaired the use of the arm.  She will never have the full use of her arm."

For the defense, defendant called to the stand several persons employed as janitors about the city hall, and interrogated

them in regard to their practice and custom in the care of the sidewalks about the premises. This evidence was ruled out. Only one of them undertook to say that the south walk was not in the icy condition described by plaintiff, and this witness justified his denial by saying that he had no distinct recollection of the matter as to the 24th day of December, or for a week prior thereto, but his testimony was given from his knowledge of the "general custom and practice around the city hall." Defendant also called to the stand the person employed as timekeeper of the street department, who produced the time sheet of James Gordon, foreman of a street cleaning gang, to show the record of the work of that gang in cleaning sidewalks on East Locust Street under date of December 24, 1919. On plaintiff's objection, the offered evidence was excluded.

At the close of all the evidence, defendant moved for a directed verdict in its favor, on the ground that plaintiff had failed to sustain her charge of negligence on the part of the city. The motion was denied, and the issues were submitted to the jury, with the result already mentioned.

Of the many errors assigned, counsel for defendant have not attempted to argue them all severally, but have combined those which they regard of importance under different headings, which we shall attempt to follow in this discussion.

I. Error is assigned upon the court's exclusion of certain testimony by janitors and employees at the city building, as to the custom which obtained among them with respect to the care of the surrounding walks. We think there was no error in this ruling. There may be circumstances under which the custom or practice observed by the city in transacting its business may be material evidence, but we think this is not a case of that kind. Proof that there was a dangerous defect in a given street, rendering it unsafe for public use, is not met or overcome by showing that the city officers are vigilant and careful in the performance of their duties. In this case, not one of the witnesses offered by the defendant undertook to say, as of his personal knowledge, that the sidewalk was not in the condition stated by the plaintiff. The witness Halloran did at first use words of denial, but finally conceded that he spoke,

1. EVIDENCE: relevancy, materiality, and competency: custom *in re* care of streets.

not from memory, but from the "custom and practice around the city hall."

II.   Counsel press upon our attention with much earnestness the court's alleged error in ruling out the record of the timekeeper of the city's street department.   We are not at all certain that the plaintiff's objection to this offer, on the ground that it is "hearsay and is not under oath," is well taken; and if the record so offered appeared to disclose any fact having competent or material bearing upon the merits of the case on trial, we should incline to hold the ruling erroneous; but, unfortunately for the defendant, an examination of the time sheet fails to reveal the record of any fact which can aid the defense.   East Locust Street extends from the Des Moines River east to the west front of the state house, a distance of a half mile or more, with a sidewalk on either side.   Turning to the time sheet, we find that it records the fact that, on December 24, 1919, James Gordon and his gang worked eight hours each, "cleaning sidewalks on East Locust Street."   Simply this, and nothing more.   If plaintiff's story is true, she fell at about 9 or 9:30 o'clock in the morning, and the place of her fall was at the south end of the city hall, between the river and East First Street.   The record offered simply shows that the gang worked somewhere on East Locust, but it does not directly or indirectly tend to show that their cleaning operations on that day included the place where the accident occurred; or, if we should go so far as to assume that they covered the entire length of the street, there is not the slightest indication that they cleaned this particular walk before 9:30 in the morning.   It follows that the time sheet was without any probative value, and its exclusion, even upon an insufficient objection, was error without prejudice.

2. EVIDENCE: documentary: time record of work done.

III.   In charging the jury, the court said, in substance, that the defendant could not be held liable as for negligence because of snow or ice on its walks, except where, by reason of interference, their natural condition has been changed, causing such snow or ice to become rough, broken, or uneven, or to constitute a danger not due to natural causes.   To this, the court then added:

3. MUNICIPAL CORPORATIONS: streets: snow and ice: accumulations from adjoining lot.

"If, therefore, you find from the evidence in this case that the snow, ice, and slush on the sidewalk in question when and where the accident happened had, by reason of interference therewith by pedestrians' walking over the same, or by the thawing of snow and ice on the adjacent lot, causing the water to flow upon the sidewalk, and thereby causing an accumulation of ice at the place of the accident, causing said walk thereby to become ridged, rough, and uneven, or otherwise dangerous to pedestrians; and if you further find that the defendant city had notice of such condition, or such condition ought to have been known to it, in the exercise of ordinary and reasonable care, and the city authorities had a reasonable time after such notice or knowledge, if any, within which to remove the said obstructions before the accident occurred, and failed to do so, then you may find the city was guilty of negligence. And if you further find that the plaintiff was not guilty of negligence contributing to her injury, then you may return a verdict for the plaintiff, under the instructions hereinafter given you."

To so much of this instruction as refers to ice formed by the freezing of water flowing upon the walk from outside, and permitted to become ridged, rounded, rough, and uneven, appellant excepts, as being an unsound proposition of law. We think the exception is not well taken. The law as stated does not, as counsel argue, put upon the city the burden of keeping the parking around its building free from snow. The statute which makes the duty of the city to keep its streets open and free from nuisance makes no exception of a nuisance caused in the manner suggested in the instruction. That it may be difficult to maintain streets in a reasonably safe condition is no reason for excusing the city from making all reasonable effort to do so.

IV. In the course of the ninth paragraph of its charge, the court said:

"You are further instructed that it was the duty of the defendant, city of Des Moines, to exercise rea-

4. MUNICIPAL CORPORATIONS: streets: obviating responsibility.

sonable care to keep the sidewalk in question in a reasonably safe condition, and that the defendant, city of Des Moines, could not relieve itself from its

duty by delegating that work to janitors or other employees of the city."

The criticism upon this instruction misapprehends the effect of the statement that the city cannot escape responsibility for the care of its streets and sidewalks by delegating the work to janitors and employees. It is a strictly accurate statement of the law. It does not mean that the city may not authorize its officers or employees to attend to its walks. As a corporation, it has no other way to act or to perform its duties, except by and through individual representatives or servants. It may thus delegate the *work* of keeping its streets free from nuisances, but it cannot delegate its *responsibility* or its *liability*. If such work be turned over to officers or servants, as, of course, it must be, if it be done at all, their neglect in the performance of the work is the city's neglect, and it cannot avoid liability to one who is injured through such neglect by proving that it used due care to intrust the work to competent representatives. There was no error in the instruction.

V.   Upon the question of plaintiff's damages, the jury was told that, if she was found entitled to recover, her damages would include, among other things, compensation for loss of time up to the date of the trial, and the present worth of the loss of time, if any, she was reasonably certain to suffer in the future; and that, in estimating such compensation, the jury might consider her inability, if any, to earn money. The instruction is challenged on the ground that there was no showing that the woman was engaged in an independent occupation, or engaged in earning money in any employment outside of her daily services as a housewife. It is also objected that there is no evidence to justify the court in giving an instruction on the subject of future pain and suffering.

5. DAMAGES: evidence: impairment of earning capacity.

Without passing upon the question whether, under our present statute, a married woman may recover for loss of time or loss of earning capacity, in the absence of allegation or evidence of her being engaged in an independent occupation, we are disposed to say that the record presents a case for the jury, even upon appellant's theory of the law. The plaintiff did allege and show that, in addition to her housework, she had been

accustomed to do more or less work for others in sewing and embroidery work, and that, as a result of her injury, she could not continue such employment. It is true, she did not attempt to prove the amount of her earnings from that source. Even if she was not, at the time of her injury, engaged in that work, her ability to do it was a resource of value, and if that ability was impaired or destroyed, it was a proper fact for consideration by the jury. See *Withey v. Fowler Co.*, 164 Iowa 377, 382; *Niemeyer v. Chicago, B. & Q. R. Co.*, 143 Iowa 129, 132; *Nolte v. Chicago, R. I. & P. R. Co.*, 165 Iowa 726.

We think, also, that the record contains sufficient evidence to render proper the court's instruction upon the question of future pain and suffering. The plaintiff testifies to her crippled condition, existing up to the time of the trial, and to continuous pain suffered by her in the broken wrist and arm; and the physician who had treated her during all the time after her injury gives it as his professional opinion that the injury is permanent, and that there will be "no change from now on."

VI. It is next said that the testimony from the records of the weather service demonstrates that the plaintiff's story as to the condition of the walk is untrue. That is a matter of argument or inference, which could very properly be urged, and was doubtless dwelt upon by counsel in submitting the case to the jury, but cannot justify the court's interference with the verdict. The testimony mentioned indicates that, while no snow had fallen during the 15 days preceding December 24th, temperatures varied from a minimum of 13 degrees to 36 degrees Fahrenheit, a sufficient range to permit thawing and freezing and the accumulation of slush and ice, a condition not at all inconsistent with plaintiff's theory of the facts.

VII. The point is made that, even if the condition of the walk was as shown by the plaintiff, there was no sufficient showing of notice to the city. True, no witness testifies to giving actual notice to any officer of the city; but there is testimony from which the jury could find that the condition complained of had existed six or seven days; and if the jury so believed, this was sufficient to support a finding that the city, in the exercise of reasonable care, ought to have discovered the condition and removed it. Indeed,

6. MUNICIPAL CORPORATIONS: streets: notice of defect.

a very much shorter time might well be held sufficient, under the admitted or proved circumstances. East Locust Street is not only one over which there is a very large volume of travel, but the place of the accident is immediately adjacent to the city hall, where are centered the offices devoted to the city business, and where practically all its officiary, great and small, are frequently, if not in daily, attendance. We cannot assume (at least, not as a matter of law) that all these gentlemen are blind, and it certainly is not holding the municipality to very rigid accountability for the jury to find that, under these circumstances, the exercise of reasonable care would have remedied the defective condition of the walk before the accident occurred.

VIII. Finally, complaint is made that the damages assessed are excessive. In the nature of things, compensation for personal injuries resulting in pain and suffering, loss of time, destruction or impairment of earning capacity, physical deformity, and mental anguish, is incapable of being measured by any very exact rule or standard. In one sense of the word, there is no such thing as a money equivalent for a broken and crippled body, or for physical or mental suffering; but, as the nearest practical approach to satisfaction for torts of this nature, the law allows the jury, in proper cases, to assess money damages. Subject to the control of the court, where the assessment clearly appears to have been influenced by passion or prejudice, the amount so awarded is left to the impartial discretion of the jury. There seems to have been nothing in the trial of this case to excite passion in the jury. The court has no special advantage over the average intelligent juror, by which it can measure such damages more fairly or more equitably than can the layman in the jury box, except, perhaps, by some sort of comparison with the precedents established in earlier cases of that class; and this is by no means at all times a satisfactory standard. The amount for which the trial court permitted this verdict to stand may, perhaps, be regarded as liberal, but we are disposed to say that it is not so extravagant as to call for our interference. The plaintiff, when injured, was a comparatively young woman, in sound bodily health, and capable of performing all the duties of wife, mother, and housekeeper, besides engaging in outside

7. NEW TRIAL: verdict: excessiveness: $7,500.

employment. Her injury was much greater than results from a simple fracture of the arm. It has made her a permanent cripple, with deformed and weakened wrist, rendering her unable to do much of the work to which she has been accustomed. She has suffered much pain, and is liable to continue to suffer. The unnatural or deformed condition of the arm, wrist, and hand must be a source of unceasing mental, as well as physical, distress. The burden so imposed upon her is lifelong. We cannot say, as· a matter of law, that· the judgment is excessive.— *Affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.