STENA STERLER, Appellee, v. THEODORE BUSCH, Appellant.

**NEGLIGENCE:** Contributory Negligence—Jury Question. Evidence reviewed, and held to present a jury question on the issue of contributory negligence.

**NEW TRIAL:** Verdict—Excessiveness—$4,000. Verdict of $4,000 for personal injury held nonexcessive.

**EVIDENCE:** Opinion Evidence—Form of Hypothetical Question. Hypothetical question reviewed, and held unobjectionable as to form.

**TRIAL:** Objections—Sufficiency. The dragnet objection that a hypothetical question is "incompetent, irrelevant, and immaterial" does not raise the point that the question does not contain all the *facts* upon which an opinion is called for.

*Appeal from Lyon District Court.*—C. C. BRADLEY, Judge.

OCTOBER 23, 1923.

REHEARING DENIED FEBRUARY 8, 1924.

ACTION at law, to recover damages for personal injury alleged to have been sustained by plaintiff on account of a collision of the automobiles of the plaintiff and the defendant at an intersection of the public highways. Plaintiff alleged that the collision and resulting damage occurred by reason of the negligence of the defendant, in that, while her brother was not driving her car to exceed 20 miles an hour, defendant was driving at a negligent, dangerous, and reckless rate of speed of 50 to 60 miles an hour; that her right leg was broken, tearing loose the knee ligaments, bruising the leg, abdomen, and side of the

chest, and causing a nervous shock from which she has not re-
covered; that she has become permanently lame and crippled,
and her health is permanently impaired; that she suffered great
physical and mental pain and anguish; and that she employed
medical assistance of the value of $275. Defendant answered in
general denial, and, by way of affirmative defense, alleged that
plaintiff's brother, who was driving her car as her agent and for
her benefit and under her direction and management, in a com-
mon enterprise, caused the plaintiff's injury by reason of the
unlawful and negligent manner in which plaintiff's car was
operated; that plaintiff's car was being driven in excess of 30
miles an hour; that, on approaching the intersection, plaintiff
did not give any sign or signal, did not keep a proper lookout
for approaching automobiles, and did not reduce her speed or
have her car under control, when approaching the intersection;
that it was within the power of plaintiff to have prevented the
collision, up to the moment the same occurred; that, by her acts,
plaintiff invited defendant to enter into and upon the intersec-
tion; that plaintiff failed to operate her automobile in accord-
ance with the laws of Iowa; and that her injury was the direct
result of her negligence. Jury trial, and verdict for plaintiff
in the sum of $4,000. Defendant appeals.—*Affirmed.*

*Shull, Stilwill, Shull & Wadden, Riniker & Thomas,* and
*Sampson & Dillon,* for appellant.

*Fisher & Riter,* for appellee.

PRESTON, C. J.—The defendant moved for a directed ver-
dict, at the close of plaintiff's testimony, and it was renewed at
the close of all the testimony. Complaint is made that the court
erred in overruling the motions. The point most fully argued,
and apparently the one most relied upon for a reversal, is the
claim that the undisputed evidence shows that plaintiff and her
driver were guilty of contributory negligence. It is also claimed
that the verdict is excessive. Two or three errors are assigned
as to the admission of evidence; but as to some of these,
the place where the evidence, objections, and rulings may be
found, is not stated, either in the assignments of error or the

brief points. This is true as to the instructions. The trial court instructed that the negligence, if any, of the driver of plaintiff's car was imputed to plaintiff, as a matter of law.

1. A number of cases are cited upon either side on the question of contributory negligence. We have said in some of our recent cases that precedents are not controlling, because of the

1. NEGLIGENCE: contributory negligence: jury question.

variance in the facts of the different cases, and that, this being so, a discussion of cases involving somewhat similar facts, or an attempt to differentiate between them, is not practical,—or that in substance. Neither is it helpful to set out the evidence in detail. The evidence is in sharp conflict. A brief summary of the evidence and claims of the parties will suffice.

The accident happened on Sunday afternoon, about 5 o'clock, August 1st. Plaintiff, a widow, owner and manager of her 160-acre farm, in company with her brother and four minor children, was proceeding south upon the public highway. Defendant, a minor, 18 years old, a farm hand, was driving his car, going west. The cars met about the center of the intersection. There were four companions in the defendant's car. The roads were dry and very dusty, but in good condition. Many cars were on the roads. For a distance of about 25 rods north of the intersection, the road slopes upward slightly. Running on north, the road passes through a cut some 7 or 8 feet deep. It is appellant's contention that an automobile coming south on this road, while in the cut before reaching the summit of the hill, about 25 rods from the intersection, would be hidden from view of anyone on the east and west road. Appellant describes the east and west road by saying that the road east of the intersection had two breaks within the first half mile, the closest 300 feet east of the intersection, and the other about 950 feet; that from the nearest break there is a 2 or 3 per cent drop to the intersection; that between the first summit east of the intersection and the second, the road is rolling, but practically level; that there is a grove and a farmhouse on the north side of the road, half a mile east of the intersection. It is appellant's contention that plaintiff and her driver had an unobstructed view to the east for a distance of 25 rods north of the intersection. North of the intersection and on the west side of the road was

a cornfield, which appellee claims would obstruct the view from the west until the road line was reached.

Appellee's version of the collision is substantially this: That, when appellee and her brother arrived at the peak of the road, 25 rods north, the driver looked toward the east, and saw a car coming rapidly toward the intersection; that appellee did not look to the east again until he arrived at a point about even with the north line of fence; that he glanced to the east, and saw the car of appellant coming toward him at a terrific rate of speed, 50 to 60 miles an hour. According to appellant's evidence, he looked to the north, when his car was at the summit, some 900 feet from the intersection, and saw no one approaching; and he proceeded to the intersection at a rate of speed of about 30 miles an hour, and did not see appellee's car until it was about two or three car lengths from the intersection, which he thought was about the same distance from the intersection as his own car. He says that, at the speed he was going, it was impossible for him to turn or slow down, or to avoid the accident. There is a dispute as to the location of the cars after the accident.

Appellee's version of the transaction and circumstances preceding is that plaintiff's driver looked to the east and west about 15 or 20 rods from the intersection; that there was no car approaching from the east, except the car about half a mile from the intersection; that plaintiff's car drove upon the intersection at a speed of about 15 miles per hour; that the driver saw the defendant's 6-cylinder, 5-passenger car approaching from the east at a high rate of speed; that plaintiff could not stop; that it wasn't a second from the time the driver saw the defendant's car until it struck and turned plaintiff's car over and pushed it a ways; that plaintiff's driver saw the occupants of defendant's car just before it hit, and saw one or two hands out; that, from the point where the plaintiff's driver looked to the east, the road from the intersection east for half a mile was visible, so that he knew there was no car approaching from the east except the car then almost half a mile away; that the vision of plaintiff's driver was obstructed by a field of corn to the west, and he was approaching the crossing cautiously because

of the cornfield, lest someone might be approaching from the west.

The defendant testified:

"Q. Now, explain to the jury, Theodore, the reason why you didn't see that car coming from the north until it got within two or three car lengths of the center of the intersection, can you? A. No, sir. Q. You can't think of any reason for it, can you? Your eyesight was good? A. Yes. Q. Your faculties just as good as they are now? A. Yes, sir. Q. And you can't assign any reason, can you, for not having seen the Sterler car until it was within two or three car lengths of the center of the intersection,—isn't that true? A. I can't say any reason; no. Q. Do you mean to say you were so absorbed and so busy driving a car 30 miles an hour, with the experience you have had, that you couldn't see a car coming until it got that close to you? A. I didn't think there was a car coming, so I didn't pay much attention to the road up that way."

There was evidence tending to support the claims of both. Without going into the evidence further, we are of opinion that the question as to the contributory negligence of plaintiff and her driver was for the jury.

2. To the point that the damages are excessive, and given under the influence of passion, appellant cites *Switzer v. Baker*, 178 Iowa 1063, 1075. The point seems not to be mentioned at the page cited, or anywhere in the case. Appellant also cites, on this point, *Gilbert v. Vanderwaal*, 181 Iowa 685, 697; *O'Conner v. Chicago, R. I. & P. R. Co.*, 144 Iowa 289; *Buffalo v. City of Des Moines*, 193 Iowa 194, at 200 and 202. In the *Gilbert* case, plaintiff had a fractured limb. The union of the broken parts was sound and secure. It did not appear that he was lame, or that he would suffer in the future any material inconvenience or discomfort. In view of the nature of the injuries, the substantial recovery therefrom, and other matters, a verdict of $5,000 was reduced to $3,500, which was approximately the amount allowed by the jury in this case. We think that this plaintiff's injuries are more severe than Gilbert's injuries. We shall refer to them in a moment. In the *O'Conner* case, there was no question of excessive damages. The case was reversed because of error in

2. NEW TRIAL: verdict: excessiveness: $4,000.

an instruction in regard to damages. As we understand appellant, these cases are cited on the general proposition as to damages, and whether they are excessive. In the *Buffalo* case, a married woman, without independent occupation, was permitted to recover $7,500. The injuries were described, and this court held that it was not so extravagant as to call for our interference. Numerous cases are referred to and cited on this question in *Brause v. Brause,* 190 Iowa 329. See, also, *O'Conner v. Chicago, R. I. & P. R. Co.,* supra. There is no fixed rule. The matter is largely within the discretion of the jury. One jury might award more, and another less. The mere fact that the jury awarded more than this court would allow, is not conclusive nor controlling. We are of opinion that the amount awarded in the instant case is not so out of proportion to the injury suffered as to shock the conscience and point inevitably to the conclusion that the jury were misled by ignorance, passion, or prejudice. This is especially true in view of the fact that the trial court refused to set aside the verdict or reduce the amount. *Brause v. Brause,* supra, at 337.

Perhaps some reference should be made to the testimony in regard to plaintiff's injuries, and this we shall do briefly. It is conceded by appellant that plaintiff was seriously injured. She was in the hospital and incapacitated for several months. Her medical bills were about $300. Her suffering seems to have been considerable. The evidence tends to show that her injuries are permanent. The injured knee does not seem to support her, and is still painful; it comes back, in place of bending forward; the knee joint bends back; "feels like something grinding in there," as she says. The medical evidence tends to show that the injured knee is larger, and the limb above the knee is larger than the other; that, shortly before the trial, there was still some enlargement and swelling, pain, and pressure over the place of the fracture; that the ligaments hold the joint loosely, —considerable play. The bruises and injuries to the lower part of the abdomen were severe, and, though somewhat improved at the time of the trial, the evidence tends to show that her injuries caused varicose veins, which are usually permanent. Such veins are inactive, and the circulation of the blood is impaired; the blood coagulates, and the veins are not in condition to function

properly. The effect of varicose veins reflects upon the nervous system. She has varicose veins in the abdomen. One of the doctors testifies that there is a condition of the knee in her case that cannot be cured, and not much improved from what it is now.

3. Error is predicated upon the admission of evidence as to the speed of an automobile. The witness qualified, and we see no reason for holding error. The court also admitted evidence of witnesses as to their observations a half mile east from the intersection. It is thought that this was too remote. Under the circumstances, we think the evidence was proper, and the weight of it was for the jury.

3. EVIDENCE: opinion evidence: form of hypothetical question.

4. It is thought that the court erred in allowing certain hypothetical questions to be put to and answered by the medical witnesses. Cases are cited on the proposition as to the proper form of hypothetical questions. The questions were of considerable length. The objection, or so much of it as is now urged, is that the question invades the province of the jury, and that the answer is a conclusion. After assuming, in a long hypothetical question, the facts as shown by the evidence, the question concludes:

"Assuming that, on August 1, 1920, she was at that time in an accident in which she received bruises, and the bruises about the abdominal cavity, and particularly the lower part thereof, which resulted in great discoloration of the parts about the puba and lower part of the abdomen, which remained discolored for some little time and were intensively severe, and since then for a time, and that, soon after the injury, the veins were enlarged and swollen and somewhat discolored, and that the veins about the parts named have remained in that condition down to the present time, being reduced, however, considerably since October 11, 1920, but yet remaining pronouncedly discolored and distended, and that she never received any other injury to those affected parts in question, *what would you say as to that trouble from which she is now suffering in that region? A. The injury was responsible for the swelling and discoloration as it was when I examined her.*"

The words italicized are the part complained of. Witness

was not asked to give his opinion as an expert as to the cause of the injury, or as to how the injury was made, as in *State v. Rainsbarger*, 74 Iowa 196, 204, *Sever v. Minneapolis & St. L. R. Co.*, 156 Iowa 664, and *Kirby v. Chicago, R. I. & P. R. Co.*, 173 Iowa 144, 158. But the question and answer, more particularly the answer, perhaps, refer to the cause of the condition: that is, the swelling and discoloration. True, the witness used the word "responsible," instead of "cause," or that the condition as to swelling was traceable to the injury, as in the *Brier* case, infra, at 1223; but the meaning, to all intents and purposes, is the same. It may be true that the italicized part of the question is somewhat ambiguous, but no objection covering that thought is made, nor is it argued now. The answer cures that, and shows that the witness understood that he was asked as to whether the condition he found was caused by the injuries described in the hypothetical question. Counsel for appellant state in argument that the proper form would be:

"What would you say as to what might have been the trouble, or what would you say was the probable cause of the trouble from which she is now suffering in that region?"

Taking the question and answer together, it seems to us that there is little difference in what was actually asked and answered, and the form insisted upon by appellant. Some of the cases hold substantially as contended by appellant, as to the form which uses the word "might." Other cases criticize the use of the word "might" as speculative, and in effect state the rule that the proper form is to state whether it is likely or probable. We think that the objection is not well taken. There are many cases on this subject, but the citation of two or three will suffice. See *State v. Hessenius*, 165 Iowa 415, 429; *Brier v. Chicago, R. I. & P. R. Co.*, 183 Iowa 1212, 1222, *et seq*. For the reasons before stated, the *Kirby* case and other cases cited by appellant are not applicable to the instant situation.

5. The same doctor was asked in regard to another phase of plaintiff's condition:

"Now, assuming that all the facts stated to you in the hypothetical questions heretofore propounded to you, and assuming the further fact that the plaintiff frequently, when she

4. TRIAL: objec-
tions: suf-
ficiency.

steps on some object with force, or places her foot in an unusual position with her weight on it, that the knee bends back, and that she is unable to use it until she has rubbed it; and that, when she goes down a stairway, she is required to put both feet on the same step before she lands on the next step, and that, when her leg bends back and gets out of position and will not return to its normal position without being rubbed, and that such an experience is attended with considerable pain, * * * and never had any such difficulty prior to the accident, and has had no injury thereto since, what would you then say as to the permanency of that condition, as to whether or not it would be likely to be continued with pain?''

Witness was permitted to answer. The objection was that it was improper in form, assumed a state of facts not in the record, and was incompetent, immaterial, and irrelevant.

"Court: If the doctor remembers what was involved in the prior hypothetical questions and this question, he may answer."

The only objection now urged to the question is that the same is improper in form, and does not contain, in and of itself, the specific facts upon which the doctor was asked to base his opinion: in other words, that, instead of again repeating the long hypothetical questions which had preceded, this question adds to prior questions, and does not contain in one question all the facts upon which the hypothetical question is based. It is doubtful whether the objection covers that proposition. Why it was improper in form is not stated in the objection: that is, that the facts were not all in one question. The omnibus objection, incompetent, irrelevant, and immaterial, does not point out or call the trial court's attention to the objection now urged. *Vedder v. Delaney,* 122 Iowa 583, 586. No other cases are cited as to this procedure, but we see no objection to the method adopted.

After a careful examination of the record, we are of opinion that no prejudicial error appears. The judgment is—*Affirmed.*

WEAVER, STEVENS, and DE GRAFF, JJ., concur.